*1429 The opinion of the court was delivered by
Nicholls, . J.
The action referred to in plaintiffs’ petition, in which this court dismissed their demand as of now-suit, will be found (with the facts of the case stated) reported in the 47th An. 1805, entitled Heirs of Brigot vs. Brigot. The proceedings in France which are referred to were instituted by the widow of Fiore Nicolas Brigot against defendant and her deceased sister and Anne Meul-lanotte, in a suit in which she claimed for herself and her children the nullity of a transaction or compromise between AnneMeullanotte and Flore Nicolas Brigot, the husband and father of the present plaintiffs. Under the terms of that compromise Flore Nicolas Brigot had become the usufructuary during life of the properties involved in this litigation and the present defendant and her sister (of whom she is the legatee) were given the naked ownership of the same by Anne Meullanotte.
The proceedings in France resulted in a judgment which, while decreeing said act null and void in so far as the same conferred upon defendant and her sister any right in the properties in New Orleans therein mentioned, and while decreeing them to belong in their entirety to the succession' of Flore Nicolas Brigot, none the less recognized the rights of the defendant and her sister which the law of France vested in them in said properties (as natural children of Flore Nicolas Brigot) as joint owners with his widow and legitimate children (the plaintiffs in this case), and ordering a partition of the same to be made between the said owners.
Basing themselves upon this French judgment, the present plaintiffs asked in the former suits that the rights of parties be held fixed by that judgment, and that the properties be partitioned according to its terms among the owners. The present defendant (under her original rights and as legatee of her deceased sister) was made defendant in the ease. The latter pleaded as res judicata a judgment which she declared had been rendered in the Fourth District Court in 1876, and in which she and her sister were plaintiffs and the present plaintiffs were defendants, and in which it was decreed that she and her sister were the sole owners of the said properties. The court sustained this exception and dismissed plaintiffs’ suit, and they appealed. It was upon this appeal that this court rendered the judgment reported in the 47 An. 1305. Our decision altered the judgment of the District Court from a final judgment to one of non- *1430 suit. The court held that the plaintiff could not ignore the State judgment which had been rendered in 1876; that that judgment could not be impeached collaterally, but that it would have to be attacked by direct action. The present action is the result of that decree.
The first attack made by the plaintiffs upon the judgment of the-Fourth District Court is based upon the claim that Fergus Fuselier, who signed the pleading in that case on their behalf, was without authority to represent them. We find in the record a letter from Mrs. Brigot (the widow of Flore Nicolas Brigot), dated Bordeaux, 28th November, 1874, to the French Consul, New Orleans, in which she used the following language:
“ Permettez-nous de recourir á votre haute bienveillance et protection pour un service á rendre á une famille infortunée ayant en Louisiane de grand intéréts. .11 s’agit de renseigments précis et exacts áfournir sur l’état de Paffaire Brigot en litis pendance a New Orleans, affaire dont la conduite avait été remise aux soins généreux de MM. Oavaroc & Son, et la défence confiée á M. Fuselier, de New York, leur avocat ordinaire, et en cette circonstance, le nfitre.”
The writer then entered into an explanation of the proceedings in New Orleans and complained that her letters, written from France to Cavaroc & Son, and (evidently) to her attorney, had not yet been answered, and that it was all important that she should be advised of the situation in Louisiana. In view of that fact she thus wrote to the consul:
“ Ne pourriez-nous pas, en conséquence, Monsieur le Consul, nous assurer: (1) Si aucun jugement. n’a été rendu pour ou contre nous á la Nouvelle Orleans; (2) si M. Fuselier, de New York (croyons nous), a re<ju et porté á la connaissance de la cour de la Nouvelle Orléans la lettre de l’avoué Chassaing, de Bordeaux, notifiant & la dite cour la résolution prise par lui et les raisons qui ont fait appeler la méme cause en France; (3) si le tribunal Américain, prenant en considération la dite piece et les raisons invoquées, a prononcé, comme il devait, le suspension de tout jugement, vu l’intervention légitime et motivée du tribunal Franpais,” etc.
We find in the record a second letter to the consul, dated the 20th of May, 1875, in which was enclosed a letter to Mr. Fuselier, for in it she said:
“ Je vous prie, Monsieur le Consul, de vouloir faire passer a M. *1431 Fuselier, avocat de votre ville, ce billet, et lui demander s’il reste toujours mon défenseur, ou s’il se décharge de la conduite de mes intérets. JDans ce dernier cas je compte sur votre sympathie pour me faire représenter par une personne digne de. votre conñance.”
¥e presume the letter to Mr. Fuselier referred to was that which is copied in the record, and was as follows:
“Bordeaux, 20 Mai, 1875.
“ Monsieur Fuselier, Avoeat a la Nouvelle Orléans, Etats XJnis d’Amérique:
“ Monsieur — Je ne sais que penser de votre long silence, car on n’a pas seulement répondu a l’assignation que M. Ohassaing, mon avoué, vous a envoyée. J’ai écrit moi-méme a différentes reprises, et toujours le méme silence; j’aime a croire que mes lettres ne vous sent pas parvenúes, et je repousse l’idée que vous ne vous oecupez plus de moi.
“ Quoiqu’il en soit, monsieur, s’il en était ainsi je vous prierais de donner a Monsieur le Consul une prompte réponse.
“ Je vous annonce que mon procés, plaidé devant le tribunal de Bordeaux, a eu un jugement en notre faveur, etdés qu’on m’en auru délivré une expédition je vous le ferai parvenir.”
What occurred subsequent to the date of these letters we do not know, but they certainly show that Mr. Fuselier had, prior to that time, represented the parties in New Orleans.
The second ground of nullity assigned was “ that Widow Flore Nicolas Brigot, as French administratrix of her husband’s succession and natural tutrix of her minor children, never qualified as such in Louisiana and could not have acted extra-territorially, hence was without power or authority to have appointed any agent or attorney to defend the interests of said minors in said suit, which purported to involve the status of heirship and rights in and to said aforesaid described properties.”
The defendants raised no objections of that kind in the suit, on the contrary they voluntariiy answered through their attorney — putting at issue plaintiff’s title and defending their own. They were directly interested in defeating the demand of the plaintiff in that suit, and they can not now object that they were without power or authority to stand in judgment to that effect. We think, however, they were authorized to do so (Succession of McCan, ante, p. 600). The third *1432 ground of nullity is that Mrs. Brigot had no right or authority as natural tutrix to authorize the prosecution of said suit on their behalf, for the reason that there was then a conflict of interest in said suit and in the subject matter thereof between herself, as donee under her marriage contract with Flore Nicolas Brigot, on the one part and the said minor heirs on the other, the former claiming under a contract and the latter by descent and succession from Flore Nicolas Brigot, and that a curator ad hoc should have been appointed to represent them. The same parties who were brought as defendants into the Fourth District Court jointly (and who appeared therein) appear in the present suit, asserting their claim now as they did before. If there should be eventually any conflict of interest between the parties inter se (as matters have shaped themselves), their interests are and were identical, in so far as they united in defeating: the claims and pretensions of the present defendant and her sister.
The fourth ground is Chat the judgment attempted to pass upon the title of said properties in a sequestration suit whose purpose was to affect the rents and revenues of the properties; that before and at the time the judgment was rendered the so-called defendants in said suit were, by the joint action of the counsel for the then plaintiffs and of Fuselier, the self-constituted attoimey at law of the defendants therein, put out of court and thereby ceased to be defendants in said suit, and had no legal standing therein to warrant said judgment against them; that after the reconventional demand and suit was discontinued, a default should have been taken and confirmed,which was not done; that after the discontinuance of the said reconven-tional demand and answer on the part of their so-called attorney, a judgment against E. C. Guillett on the possessory action could have been rendered therein, but none on the petitory action against defendants could have been validly rendered thereon, as no issue had been joined thereon or had been discontinued; that no real petitory action was ever instituted against the present plaintiffs herein, nor was it instituted against the party in actual possession as the law directs, but only a suit against Guillett was instituted, who was not at the time in actual possession, and who had then already been dismissed by his mandatories as collecting'agent, and who was not at that time the farmer or lessee of said property.
In November, 18Í2, the defendant and her sister filed in one of the District Courts of New Orleans, a petition in which they averred *1433 that they were the sole owners of certain property in that city, which they described (the same property involved herein) ; that they acquired the naked ownership of the same by donation inter vivos, valid in law, from Mrs. Anne Meullanotte, by authentic act before Delaloge and De la Ohaune, notaries in Paris, on the 2d of December, 1848, the usufruct in said property having been conceded by said Meullanotte by said same act to petitioners’ father, Flore Nicolas Brigot; that said usufructuary, their father, had died in July, 1870, and by his death his rights to the usufruct of said property had determined and ceased. That petitioners’ right to the ownership of said property had been recognized by said act of December 2, 1848, which their father signed; that they also hadan indisputable title to said property for having acquired and held the same through the said usufructuary, possessing in their name in good faith, with a just ■and translative title duly recorded by a continuous, uninterrupted public and unequivocal possession as owners during more than twice ten years, during which time they have never been disturbed or molested in any manner whatever. That, however, since the death of their father (the usufructuary) they had ill vain several times endeavored to obtain amicably the entry and enjoyment of said property, but that their rights and pretensions, as the sole and unconditional owners thereof, with the privilege of absolute enjoyment of the same, had not been recognized by the party found in possession thereof at the death of petitioners’ father, the usufruct-uary aforesaid. That of late, determined to obtain redress, they had formally applied to the person now occupying the same, Edward O. •Guillett, of this city, and who is a mere trespasser without any valid title for such entry and enjoyment, and that he had peremptorily refused to acknowledge their rights and allow such entry and possession, and had even instructed the tenants of said premises not to pay the rent to any one but himself. That petitioners were not aware of .the nature of the pretensions which Guillett set up adversely to ■theirs to said premises, whether he claimed to be the owner himself or to represent the party whom he deemed to be the owner thereof, •or whether he individually or otherwise claims any right or title to said property; that petitioners considered and averred that said Guillett was a mere trespasser, without any title, whatever be the position which he takes in the matter. That ever since their father •died petitioners understood and believed that said Guillett had (or *1434 could have for his individual account or otherwise) collected the rental of said property, amounting in the aggregate at that time to four thousand dollars, which he should be held to reimburse to petitioners, and that they had good ground to apprehend that he might make use of his possession of said property to convert the fruits and revenues of said property to his own use, or that of his constituent or constituents, if any he had, to petitioners’ injury. That he was well acquainted with the facts of the death of E. N. Brigot at the time of its occurrence, and instead of discontinuing any further administration of said property or continuing the same for account of whom it might concern as negotiorum gestor had kept control of the same, declined to surrender the same to petitioners, who are the sole owners thereof; that by such acts, whether he had retained the amounts collected for his own account or had turned them over to the parties he claimed to represent, he was personally responsible for the amount so received. That petitioners were entitled to be recognized as sole owners of said property and to be put as such in possession of the same, but that, in the meantime, the same should be sequestered until further orders of the court. They prayed for a sequestration and followed this with the prayer that Guillett be cited to surrender possession of said property to the sheriff and to be cited in his individual name in case he set up any pretensions to said property, and also as agent of any person he might claim to represent in case he did not set up any pretensions, individually, to the same; that after due proceedings there be judgment in favor of petitioners, recognizing them as the sole owners of said pieces of property, and ordering them to (be) put at once as owners in the peaceful possession and enjoyment thereof, and that Guillett be condemned individually (and in solido with him any person or persons whom he might claim to represent) to pay to petitioners the sum of four thousand dollars, or any other sum found to have been received by him, with legal interest.
The property was sequestered by the sheriff under an order of court to that effect.
We do not find what action was taken under this petition as to Guillett. We presume he must have been cited, disclaimed personal interest in the matters involved and announced the present plaintiffs to be. the real parties in interest, for we find that the following answer was filed in the case as of April 21, 1873:
*1435 “And now comes into court, by her counsel, undersigned Patronelle Daudin, widow of Flore Nicolas Brigot, in her own name, as surviving partner in the community of acquets and gains between her' and said deceased, and as such usufructuary by law, of his share in said community, and also for, and in the name, and as natural tutrix of Eugenie Marguerite Godeberte and Maurice Albert, children, issue of her marriage with said deceased and his sole heirs, and also in her capacity as administratrix of the succession of said deceased, who, the said Patronelle Daudin, being cited to answer the petition herein filed by the said plaintiffs, Eugenie Adelaide Marie Brigot and Augustine Eulalie Isabelle Brigot, says that she was (until the sequestration herein taken) in possession of the property described in said petition, and held the same as owner in her aforesaid capacity, and is now still entitled to such ownership and possession as aforesaid. That the said plaintiffs have no right or title to the ownership or possession thereof, for this, to-wit:
“1. That the alleged title under and by virtue of which plaintiffs claim to be the owners of said property, although purporting to be a donation to them made by Anne Muellanotte, widow of Nicolas. Brigot, was really and in truth a donation to them made by said Flore Nicolas Brigot, and attempted to be disguised under the form of a transaction and compromise between said F. N. Brigot and said Anne Muellanotte, and a donation by the latter to the plaintiffs.
“That the said plaintiffs are the adulterous bastard children of said Flore Nicolas Brigot, born of his adulterous connection with Jeannette Amante Adele Chastaing, who was at the time of their conception and birth the legitimate wife of Louis Eleonor Leroux, and while the said Flore Nicolas Brigot and said J. A. A. Chastaing could not lawfully have married. That under the laws of France, where said act was passed, as well as by the laws of Louisiana, said plaintiffs could not receive any donation from their said adulterous father, and that the said interposition and disguise were adopted in order to evade those laws, and ths contract attempted to be established by their means is radically null and void.
“ 2. That the said alleged title under which said plaintiffs claim to be the owners of the said property, being in reality a donation made to them by Flore Nicolas Brigot, is further null and void, because in the act making the same he has reserved to himself the usufruct or enjoyment of the property donated.
*1436 “3. That even if the said donation made by the said P. N. Brigot through the said Anne Meullanotte was valid (which is not admitted tout expressly denied) it was by the laws of France, where it was made, revoked by the birth of legitimate children of the said F. N. Brigot, subsequent to its execution, and can now have no effect.
“ 4. That the said donation, even if valid at the time it was made (which is denied), could not exceed the amount of one-half of the property of said P. N. Brigot, he having left at his death two legitimate children.
" 5. That the property claimed by the said petitioners is the exclusive property of the succession of the said Nicolas Brigot, respondent’s deceased husband, who inherited the same from Nicolas Brigot, his father — that the said Brigot having died in Bordeaux on the 12th of July, 1870, leaving as sole legitimate children and heirs the two minors above named, of whom respondent is the tutrix, the same has descended to the said minors, who alone are entitled to the possession and enjoyment thereof,
“ Wherefore respondent prays that plaintiffs’ demand be rejected at their costs, that respondent in her capacities of tutrix of her above named wards and administratrix of the succession of her said deceased husband be maintained in her possession of the property described in plaintiffs’ petition, and that said plaintiffs be decreed to have no right or title in or to the said property, but that the same be held to belong exclusively ‘to the succession of respondent’s deceased husband, and lastly, that the sequestration herein ordered be dissolved and the sheriff ordered to restore the same to respondent’s agent. And respondent, reserving her right to claim in a subsequent action damages from plaintiffs for disturbing her possession of and slandering her title to said property, prays for general relief in the premises.
(Signed) “ Fergus Fuselier,
Attorney for Respondents.”
On the 26th of April, 1873, the attorney of the plaintiffs in that suit moved (without prejudice to exceptions to reconventional demand), on suggesting that the answer of Mrs. Widow F. N. Brigot in her several capacities assailed the title of plaintiff on grounds which were on their face not valid and sufficient in law, and which provoke issues improperly presented, and the examination of which should be excluded, and under which evidence was inadmissible, *1437 that said grounds should be stricken from said answer, and said answer treated as a general denial at best with averment of possession.
Simultaneously plaintiffs’ attorney filed what would appear to have been intended as an exception covering the same grounds as the motion, with the added objection that Widow Brigot could not stand in judgment until she had produced proof of her representative capacities. The prayer of the exception was that she be ordered to produce evidence of the same; that oyer be granted plaintiff of such evidence; that in default of production of same, defendant’s recon-ventional demand be dismissed; that eventually (in all contingencies) the reconventional demand be dismissed with costs for the Reasons stated as setting forth no cause of action; that contingently they pleaded the general issue and prayed for judgment in their favor, as well on the main as on the reconventional demand, and for general relief.
On the 1st of May, 1873, the court dismissed the rule taken to strike out from the answer.
The case went to trial on the 16th of December, 1874. We find “ in the note of evidence ” the statement that “ the exception to the capacities of the widow Brigot as tutrix and administratrix is withdrawn;” also the further statement: “Mr. Fuselier discontinues the reconventional demand of the widow F. Nicholas Brigot herein made in all capacities.” Subsequent to this the plaintiffs offered in evidence the compromise made before Delaloge and De la Chaume, in Paris, on the 2d December, 1846, and the certificate of the recording thereof in New Orleans. Mr. Fuselier objected to the compromise being offered in evidence. “The court sustained the objection and allowed the same to be withdrawn from the court for the purpose of having it sent to Paris and be properly authenticated.” Judge Lynch was then presiding. No judgment was rendered in the case until the 1st of December, 1876. On that day judgment was rendered as follows.:
“ This case having been submitted to the court for adjudication on the written evidence on file and the court considering the law and the said evidence in favor of plaintiff herein, it is ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Eugenie Adelaide Marie Brigot and of Augustine Eulalie Isabelle Brigot, recognizing them as the sole owners of two certain lots of ground *1438 (describing them), dissolving the sequestration herein issued and placing said plaintiffs in possession of said property, reserving to the said plaintiffs the right to recover of the defendants, Widow F. N. Brigot, individually, and as tutrix of the minor children of said F. N. -Brigot and as administratrix of his succession, the sum received by her directly or through agents, and that there be judgment .in favor of E. 0. Guillett, relieving him from any liabilities to plaintiffs.” We find nothing in the record to show that the act of compromise was, subsequently to being objected to, properly authenticated and submitted to the court as evidence, and if so, that it was under any agreement of parties. This judgment was signed “ B. L. Lynch, Judge of the Superior District Court, sitting during the absence of Hugh J. Campbell, Judge of this court;.” No appeal was taken frorja it and no proceedings seem to have been taken in this State in reference to the property or the judgment up to the institution of the former suit heve, which resulted in the judgment of this court reported in the Forty-seventh Annual. No explanation of this long delay has been made. During the intervening period the property seems to have remained in the possession of the present defendant and her sister, under their original title, and the judgment of 1876 in their favor. The plaintiffs contend that they disappeared from that suit by a discontinuance by Fuselier of their connection with it, but we think the objection urged by him to the introduction of the act of compromise, raised subsequently to the entry of the discontinuance, shows that, for some purpose at least, they were still in court. Fuselier simply discontinued what is designated as the “reconventionai demand ” of the widow and her two children. Precisely what that discontinuance was intended to extend to or cover does not clearly appear. The parties were in court as defendants in a proceeding which unquestionably raised on behalf of the plaintiff an issue as to their right not simply to the possession, butto the ownership of the property. The action lacked, perhaps, absolute compliance with the letter of the law in respect to petitory actions, inasmuch as the physical, actual possession of the same appears to have been in tenants holding under or recognizing Guillett as the agent of the parties in France who claimed ownership and possession of the same, and the proceedings were primarily directed at Guillett instead of at these actual occupants, and forcing them to disclose either Guillett or the lessors in France as the real parties in interest. These *1439 latter parties finally got before the court and joined issue with the plaintiffs under their pleadings. While any- reeonventional demand filed by them was under their control, through discontinuance they were powerless to disconnect themselves from the suit as the “ defendants ” therein after appearance and answer. Once in court they were forcedly there until its termination, unless through some exception which they had taken and which the court had sustained. Had the case been tried contradictorily with Guillett alone, a question might have arisen as to whether he was authorized to stand in judgment upon any other issue than one of possession. Young vs. Chamberlain, 15 An. 454; Prescott vs. Payne, 44 An. 658; In re Genella, 45 An. 1381. But when the parties claiming in their own right, ownership as well as possession, made themselves parties to a litigation where those issues were tendered, a very different condition existed if the ownership of the plaintiffs which is set up was contested. If we withdraw from that ease all claim on the part of the defendants to ownership in themselves to the property, they, none the less, in their pleadings denied that the claims which the plaintiffs had set up were well founded. Defendants prayed that plaintiffs’ demand be rejected. Those claims were not simply to a right of possession, but to a right of ownership. The withdrawal of any claim by the defendants of ownership in themselves left the action none the less a petitory one, on which the plaintiffs had upon themselves the burden of making good their title. It frequently happens that a defendant in such an action stands upon possession without advancing title in himself. The judgment in such an action under pleadings of that character, if favorable to the plaintiff, would close the door to the subsequent setting up by the defendant of any title which he actually then had. As a matter of course, a defendant in a peti-tory action has the right to discontinue a claim of ownership in himself which he had set up in his answer, but he does so at his peril should plaintiff succeed with a plea of the general issue, or its equivalent, still left standing by the defendant.
It is quite possible that the attorney for the defendants may have believed that in discontinuing a claim of ownership by the defendants the sole issue before the court for determination was that of the “ right of possession,” but in this we are of the opinion, in view of plaintiffs’ pleadings and defendants’ answer (even with the defendants’ claim of ownership as being in themselves stricken out) he was in error.
*1440 The theory advanced by the plaintiffs in the present suit is evidently that the plaintiffs in the suit brought in 1873 (which for convenience may be designated as the Guillett suit) went into it as plaintiffs under circumstances such as to preclude the defendant therein from contesting adversely to plaintiffs in that particular proceeding their alleged ownership of the property; that Flore Nicolas Brigot, the husband and father of the defendants, having taken possession of the property as usufructuary under the act before Delaloge and De la Chaume, was not in position to question himself the right of the plaintiffs to the naked ownership of the property as fixed in that act; that before doing so and as a condition precedent for doing so he would have to first surrender possession and then bring a direct action to annul the act of compromise; that the defendants claiming under Flore Nicolas Brigot as his heirs occupied no better position, and could not, as defendants, collaterally attack the plaintiffs’ title; that they (in same manner as their father) would have had to first yield possession and then attack just as a lessor in possession (in order to contest his lessor’s title), is required first to vacate the premises. That this was what the attorney of the plaintiffs meant when he charged that defendants were presenting-inadmissible issues in the case, and that this was what defendants’ counsel in the case recognized as being correct when he discontinued his “reconventional demand.” That the effect of the voluntary discontinuance was to place matters as if plaintiffs’ motion to strike out had been sustained and defendants had abandoned for the time being the defence, leaving them in position to renew the attack on the title later on. The present plaintiffs, as we have said, were defendants in that suit and not intervenors. Had they been inter-venors a discontinuance on their part might have taken them entirely out of court, but having gone into the case by way of answer, they could not escape the legal consequences of their having done so. They did not admit plaintiffs’ claims even as to the right of possession. Had they done so, praying that should judgment be rendered for plaintiffs it be limited to judgment for possession with reservation of defendants’ right to subsequently attack the title, and had judgment been rendered accordingly they would occupy a much stronger position before us than they do now. They remained in the case to the^end, contesting plaintiffs’ right to a judgment of any kind. Plaintiffs in their rule or motion did not pray that defendants *1441 'be dismissed from the case; what they asked was that certain portions of their pleadings be stricken out, and this application was •denied by the court.
We do not think that the effect of the qualified discontinuance ■made by defendants’ counsel, as made; was to restrict the issues in the case to a question of the right of possession. The action as ’brought by plaintiffs was intended by them to be and was framed to be a petitory action. Defendants could not force it into being a pos-sessory action purely, under pleadings such as they presented. The District Court, in deciding the case, considered it as one involving •title, and rendered judgment accordingly. Even if the judgment was erroneous it was not null. The attack made upon the jndgment for want of the evidence necessary to sustain it might have been good on appeal, but must fail when advanced in an action of nullity. We do not think the existence of the French judgment in plaintiffs’ favor on which they rely can be urged as a ground of nullity to the Louisiana judgment. The latter is last in date. Its existence was ■not pleaded in bar either at the trial or through application for a new trial, and is brought forward by way of attack on the judgment ■nearly twenty years after it was rendered.
The last ground of attack on the judgment is that B. L. Lynch, who rendered it, had no right or authority to act in lieu and place •of Hugh J. Campbell, the judge of said court, and to render a definitive judgment thereon in view of the fact that minors were interested therein.
The objection urged is not that the cause was improperly in the Fourth District Court, that it was illegally disposed of by'reason of being lodged therein, but that the judge of the Superior District •Court went into the Fourth District Court and presided over it in lieu of the judge of that court, then absent.
This action was evidently based upon the thirteenth section of Act No. 255 of 1855, entitled “ An act relative to District Courts for the parish and city of New Orleans,” which declared that it should “ be the duty of each of the judges of the District Courts of New Orleans, commencing with the judge of the First District Court, to hold alternately during one week the court which any one of the judges may be incapacitated from holding by reason of illness or by leave of absence.’ ’
If the cause fell properly under the jurisdiction of the Fourth Dis *1442 trict Court, we do not think that court’s jurisdiction was ousted' by the fact that the judge of another district presided over the same on a certain occasion or occasions and rendered judgments therein. If the validity of such judgments were called in question by reason of that fact, it would be grounded on the want of legal authority and power of the judge to preside, rather than on a want of jurisdiction in the court itself. Plaintiffs claim that the act of 1855 was repealed by Act No. 86 of 1870, entitled “ An act to prevent conflict of jurisdiction between the several courts of this State, and to punish the same.”
Defendants, in their brief, say: “This same objection was raised and passed upon by this court in the case of De St. Romes vs. Levee Cotton Press, 31 An. 224, and besides, an examination of the two acts shows that there is no conflict between them. The former allows and directs an interchange of judges in case of inability to act, and the latter prohibits one court from taking jurisdiction of a subject matter already assigned to another court.
“The error into which plaintiff has fallen is in measuring the power and authority of the judge by the jurisdiction of his own court. The two are materially different.”
When the judge of one District Court, under a legal system of interchange, acts in another or upon matters lodged in that other, the acts done by him must, in their legal effect, be held as if performed by the actual judge of the latter district acting within his jurisdiction and by that court.
We think the St. Romes decision controls the present case as to^ the legality and continued operation of the act of 1855, at the time the judgment attacked was assigned.
Plaintiffs attack the act of compromise made between Floi'e Nicolas Brigot and Anne Muelanotte on a number of grounds, the whole attack being made in aid of their claim that the property in controversy herein belongs to them and not to the defendant.
The question of the ownership of this property having been raised and adjudicated upon inthe judgment attacked herein, and the judgment itself having resisted the attacks made upon it, we do not think the issue any longer an open one. (See Heirs of Brigot vs. Brigot, 47 An. 1306.)
The judgment appealed from is affirmed.