NICHOLLS, C. J.
The plaintiff alleged that he purchased from the defendant on the 16th of July, 1889, certain described property for $6,000 — 81,000 cash, the balance represented by 6 interest-bearing promissory notes, payable in 6, 12, 18, 24, 30, and 36 months after date; that he had paid the price of the property to his vendor; that he had purchased the property under the belief into which he had been led that he had been legally divested of the ownership of the property, and that the defendant was the owner thereof, and not knowing that he was himself the owner of it at the time of his purchase, and still less that he had been defrauded of the same; that he was in ignorance of the situation up to the institution of the present suit. He seeks in this action to recover from his vendor, the •defendant, the sum of $0,000 so paid to him, with interest from the date of his purchase and attorney’s fees, and prays additionally that a certain mortgage which he refers to of date of June 24, 1874, and “its subsequent litigation,” be decreed null and void in so far as it affected him.
The grounds upon which this relief is asked are: That “his father, John Sadler, died in New Orleans on the 27th of September, 1873, leaving him, his only child, sole heir to all his estate, which amounted at that time, in movables, immovables, and credits, to more than $40,000, and trifling debts. That at the time of his father’s death he was eight years old. That at the time of his father’s death the property which he himself bought subsequently from the defendant belonged to his father, John Sadler, and vested in him as his heir. That it had belonged to his father’s separate estate. That it was highly improved property, and very valuable. That there was some other property belonging to the community which existed between his father and mother. That on the 24th of April, 1874, his tutrix petitioned the court to enable her to borrow $4,000 (yet she alleged debts to be due only to. the amount of $3,650 upon her community properties, and not on the separate property of his father). That the alleged debts were not one-fourth of the amount stated, and these debts, if paid at all, were not paid with funds received under the mortgage; that not a dollar had been received either by his father’s succession or himself under said mortgage. That payment of various amounts were made without authorization, which the mortgagee had not accounted for.
“That on the 24th of June, 1874, a fraudulent mortgage was given on the properties so bought by him from defendant by William J. Oastell without the authority or consent of the natural tutrix, nor of a duly qualified under-tutor, and for no consideration, besides being given on the separate property of his lather in order to defraud him. That his mother did not make the mark ‘X’ on the alleged mortgage of June 24, 1874. That she did not have rheumatism in her hands, arms, or any part of her body on said date, but was entirely under the influence of intoxicating liquors. That at that time he was unrepresented by a duly qualified under-tutor; and that all the parties who composed the different family meetings in the succession of his father had claims and interests adverse to him.
“That William J. Oastell, who was the instrumental notary who executed the fraudulent mortgage of June 24, 1874, and who was then administering (in fact) the succession of his father, was at the time of said mortgage the regularly employed notary of John Henderson, Jr., in whose favor the mortgage was given, and acted on his behalf in the matter of said mortgage.” The mortgage in favor of John Henderson, Jr., was evidently foreclosed by him on the property, and purchased by himself on the 9th of December, 1876, though the foreclosure and purchase are referred to in a very general and insufficient manner in the pleadings. In respect to that matter plaintiff alleges that he *521 was not legally represented in the “aforesaid suit of foreclosure” (not before mentioned); that “his tutor ad hoe did not take the requisite oath; that his mother was no longer his tutrix, having lost the tutorship by a marriage after her appointment as tutrix.” Plaintiff averred “that James A. Kelly was totally incompetent, morally and otherwise, to be the tutor of petitioner, or administrator of the succession, as was fully known to those who put him there; that no account had been rendered to petitioner of his father’s succession by either his tutor or tutrix; that the properties were illegally sold on December 9, 1876, ‘en bloc,’ for account of John B. J. Henderson, for less than one-fourth of their actual value: that there were many persons at said illegal sale of December 9, 1876, with ready money to pay $2,000 cash for any one of the five pieces of property then sold, even for that of the five of least value.”
Plaintiff filed subsequently a supplemental petition in which he alleged that the judgment obtained by Bayle J. Henderson, subsequently confirmed by the Supreme Court, reported in 35 La. Ann. 826, was obtained by fraud, false documents, etc., as would more fully appear by its records made part of that petition and on the trial of the cause; that X>etitioner was not a party to that suit, nor made such according to law; that the defendant, Thomas J. Henderson, was a purchaser in bad faith when he acquired petitioner’s said i>roperties as described in his original petition. This petition was filed without leave of court, and was never served.
The defendant pleaded the exception of no cause or right of action, the prescription of one, two, three, four, five, and ten years, estoppel, and res judicata; it being averred in respect to the latter exceptions that the matter and things set forth in plaintiff’s petition had been finally and irrevocably adjudged in the matter entitled “Succession of John Sadler v. Bayle J. Henderson,” affirmed on appeal, and reported in 35 La. Ann. 826.
The district court sustained the pleas of prescription, res judicata, and estoppel. In his opinion in the case the district judge said: “The dates of the proceedings attacked as the basis of plaintiff’s claim date back in the seventies, and the date of the purchase made by him which he seeks to undo in order to recover the'price was made in'1889, and this suit was filed September 3, 1902. Prescription secures an absolute bar to every cause of action alleged. The judgment in Sadler v. Henderson, reported in 35 La. Ann. 826, held the sale from the succession of plaintiff’s father to Henderson to be good and valid, and therefore the title of the succession; and, as a consequence, the rights of plaintiff as heir were lost. Many of the grounds alleged in that suit in behalf of the succession are identical in effect with those alleged here. To recover in this suit plaintiff must establish first of all that the sale to Henderson (Bayle J. Henderson) under the, mortgage attacked in that case (35 La. Ann. 826) was an absolute nullity, and that the title did not pass from the succession of plaintiff’s father. The negative of this was adjudged in that case contradictorily with plaintiff’s dative tutor. It is the ‘thing adjudged,’ then, that when, in 1889, plaintiff bought from defendant Henderson (Thomas, J. Henderson) said properties, and paid the $6,000 price which he seeks to recover in this suit on the ground that he was in error, buying what belonged, not to Henderson, his vendor, but to the plaintiff himself, the title of his father’s succession had been lost, and therefore, as his father’s heir, he was not the owner. Without proof of his own ownership at the time of the sale in 1889, it is impossible for him to recover, and, as has been already stated, it had been formally adjudged to the contrary in a suit to which he' was a party through his dative tutor. Plaintiff, in 1889, could not possibly have been ignorant of the proceeding and litigation that eventuated in, said final judgment, and, in *523 my view, hard as the conditions may be, I think he is estopped by the purchase and payment of the notes given for the price. He was then of age — plone juris — and since then (1889) about 13 years elapsed before he brought this suit. The conceded facts are unalterably against the plaintiff, and to refer the exceptions to the merits would only result in useless costs and trouble. It is better for plaintiff that the case should end here.”
A copy of the petition filed in the case which terminated in the judgment rendered by this court reported in 35 La. Ann. 826, is in the record. The action'was brought by John A. Kelly, tutor of the minor, John Vincent Sadler (the plaintiff), and administering the succession of John Sadler, deceased.
The prayer of the plaintiff in that suit was that Bayle J. Henderson be cited, and judgment be rendered in his (plaintiff’s) favor against said Henderson, and that the proceedings, adjudication, and sale in the matter of Bayle J. Henderson v. Mrs. Ellen Sadler, wife, etc., No. 8,960 of the Sixth District Court, be declared null .and void; that the aforesaid properties (those involved in the present litigation) be decreed' to belong to the estate of John Sadler, deceased; that the aforesaid- act of mortgage (that which the plaintiff in the present suit declares was illegally made in favor of Bayle J. Henderson) of —;—•, 1874, between the defendant (Bayle J. Henderson) and Mrs. Widow John Sadler, and the four promissory notes of $1,000 each annexed to the executory proceedings (in enforcement of that mortgage), be declared null and void and of no effect as to the succession of John Sadler, deceased, and as to the said minor, John Vincent Sadler, and that the said Bayle J. Henderson be condemned to pay petitioner the sum of $6,000 for the rents and revenues already accrued of said properties, and the yearly sum of $1,000 from date during pendency of suit for accruing rents and revenues, with interest from judicial demand.
The gist of that action was to recover the property from Bayle J. Henderson on grounds almost identical with those asserted in the present action, and to have the same adjudged to still belong to the succession of John Sadler and the minor. Judgment was rendered by this court on appeal in favor of the defendant, Bayle J. Henderson, and against the claim of ownership advanced by the plaintiff, the dative tutor of the present plaintiff, as far back as 1883. The plaintiff reached majority, and, so far from attacking the judgment so rendered through an action of nullity or rescission, directly acquiesced in the same by purchasing the same property from Thomas J. Henderson, the present defendant, who had doubtless bought the same from Bayle J. Henderson on the faith of the final judgment of this court. The plaintiff does not, even in the present suit, seek to have that judgment rescinded or annulled. He refers to everything that occurred in the past in reference to this property as absolute nullities, fraudulently conceived and carried out, but he does not attempt to cite Bayle J. Henderson in the action, but, substantially ignoring all the'judicial proceedings which have taken place, proceeds directly against his own vendor, Thomas J. Henderson, to recover from him money which he had paid him over 13 years ago as the price of property of which he has had and now has possession ever since his purchase. It would be essentially necessary for the plaintiff to have a standing in court that he should attack contradictorily with Bayle J. Henderson the proceedings to which he had been legally a party through his tutor. So long as those proceedings stand, they stand, so far as Thomas J. Henderson is concerned, as res judicata. They bar the way to plaintiff’s attack. It is true that under the law, in order to create res judicata, the *525 judgment advanced for that purpose must have been one between the same parties, and that the defendant, Thomas J. Henderson, is personally different from Bayle J. Henderson; but he is a vendee of this identical property from Bayle J. Henderson after the final judgment in reference to the same had been rendered in the latter’s favor, and as privy in contract with him the judgment in his vendor’s favor inured to himself. The judgment of the district court is correct, and it is hereby affirmed. Brigot v. Brigot, 47 La. Ann. 1304, 17 South. 825; Brigot v. Brigot, 49 La. Ann. 1428, 22 South. 641.