Statement of the Case.
MONROE, J.
Plaintiff, an emancipated minor, sole heir of Clayfield Cutno, deceased, brings this petitory action against Julius and Jonas Weil to recover a parcel of land, measuring 50 by 145 feet, in the parish of Ascension, of which defendants are alleged to have been in possession as trespassers since April, 1902. Plaintiff prays to be decreed the owner of the property, and that she recover the same, with $700 as damages for its unlawful detention. Defendants, after excepting, answered, denying plaintiff’s alleged ownership and heirship, denying that they are trespassers, and alleging that, on April 22, 1902, by authentic act duly recorded, they bought from J. T. Bringier the lease of said property, which had been made to him by the heirs of Clayfield Cutno, who (including plaintiff) have acquiesced in and ratified the same by receiving rental, in accordance with its terms, and who are therefore estopped to question its validity. They allege that at the time that they purchased said lease they also purchased valuable improvements resting on the property, worth, now, $2,000; that without the transfer of the lease they would not have made said *704 purchase, and tn case the lease is declared invalid they pray:
“That their right to sue their warrantor for any damages or loss arising therefrom be reserved, or should said damages be proved in this case,' which damages respondents fix at $3,000, that judgment be rendered in their favor against said Bringier. Wherefore they pray that said lease be decreed in full force and effect, and plaintiff estopped to attack it, and that they be quieted in their possession of the property.”
It is established beyond question that plaintiff is the sole owner of the property, which she inherited from her father, who acquired it before his marriage. It is shown that she is a negro girl, now some 19 or 20 years of age; that her mother, who survives, has never qualified as her tutrix; that she has two illegitimate brothers, Ben and Earl; that neither the mother nor Earl can write or sign. Defendants Introduced in evidence an instrument purporting to be a lease of the property in question signed by the two brothers mentioned (Earl Cutno by his mark) to L. A. Bringier, for the Marchand Gin Company, though in the body of the instrument the names of the lessors are given as Clayfield and Earl Cutno. The instrument is dated July 17, 1900. Ben Cutno testifies that he signed it without knowing what it contained, and that he has never received any rent, and we do not find that he is successfully contradicted as to the latter statement. It is shown, beyond doubt, that when defendants went into possession of the property they knew that Sarah Cutno, mother of the plaintiff (the latter being then a minor), had refused to sign the lease. It is also shown that defendants and their authors have been living in the neighborhood for years, and know the Cutno family, but it seems that Ben and Earl lived with their parents and were treated as their legitimate child, the plaintiff, was treated, and it may well have been that defendants did not know that they were illegitimate. There was erected on the lot in question (as we understand it) by the Marchand Gin Company, a business firm composed of Dr. J. T. Bringier and his wife, a cotton gin, which on April 22, 1902, was sold by Dr. Bringier to the defendants for $2,125; the act of sale referring to the alleged lease as follows:
“And is also included in this sale, the lease of estate of Clayfield Cutno to Dr. J. T. Bringier,-for the Marchand Gin Co.”
We fail to find that plaintiff or any one else has ever received anything in the way of rental for the property in question from the defendants. She (plaintiff) was a minor, without a tutor at the time of the alleged lease, and was emancipated for the purposes, no doubt, of this suit. The property is said to be worth (maximum figure) $250, so that $36 a year, the amount stated in the lease, would appear to be a fair rental. After the case had been closed, argued, and taken under advisement, the judge a quo, apparently of his own motion, made an order that it be “reopened, for the purpose of permitting plaintiff to make Ben Cutno and Earl Cutno parties hereto.” And plaintiff thereupon ruled defendants to show cause why they should not disclose the names and places of residence of those whom they considered included in the term “heirs of Clayfield Cut-no,” but whether she obtained any results does not appear, the rule having been continued, and Ben and Earl Cutno in the meanwhile appearing and answering. They both disclaim title to the property in question. Ben says that he signed the lease because he was asked to do so by Dr. Bringier; that he was not authorized to sign by his mother or sister, and did not represent them; and that he never demanded or received any rent. Earl says that he has no recollection of having signed the lease; that he cannot write and sign; that he has never received any rent or sought- to receive any, and has no right, and has never claimed any.
After the filing of the answers, the case *706 was resubmitted, and there was judgment for plaintiff, decreeing her to be the owner of the property claimed, and condemning defendants to pay her, as damages, $36 a year from April 22, 1902, until possession is “desired” (delivered) less $23, paid on account. The call in warranty was dismissed, and defendants’ rights as against Ben and Earl Cutno were reserved. Defendants have appealed, and plaintiff has answered, praying that the judgment be amended by increasing the amount allowed as the value of the occupancy of the property and striking out the credit of $23.
Opinion.
Counsel for defendants complain in this court that the judge a quo erred in not discharging the defendants from the case, which, counsel says, was required by article 43 of the Code of Practice.
That article reads:
“Art. 43. The petitory action, or one by which real property or any immovable right to such property may be subjected, is claimed, must be brought against the person who is in the actual possession of the immovable, even if the person having the possession be only the farmer or lessee. But, if the farmer or lessee of a real estate be sued for that cause of action, he must declare to the plaintiff the name and the residence of his lessor who shall be made a party to the suit, if he reside in the state or is represented therein, and who must defend it in place of the tenant, who shall be discharged from the suit.”
The judge a quo says, in regard to the point thus presented:
“The only difficulty which presents itself lies in the adjustment of plaintiff’s claim for fruits, rents, and revenues. If defendants had followed the directions pointed out to them in article 43, Code Prac.; disclaimed any right of ownership to the property; declared the names and residence of the lessors — plaintiff would have been compelled to have them (the defendants) discharged from the suit. But the defendants chose to contest plaintiff’s claim; to except to the suit; to question her right of ownérship; to call the transferror of their lease in' warranty; and to take up and champion the rights of their lessors — and it is logical that they should continue to bear the burden which they were* at first, so willing to assume. [Brigot’s Heirs v. Brigot] 49 La. Ann. 1438, 1439 [22 South. 641], I don’t see how they can escape liability to plaintiff for rent of the premises which they have enjoyed, uninterruptedly, since April 22, 1£02. It was within their power to prove any payment of rent to plaintiff, but the record does not disclose, with any degree of certainty, that they have ever paid plaintiff any rent at all, except $8 which they claim to have given plaintiff’s mother, on one occasion, in Lutcher, and the additional sum of $15, on some Monday in the past, making, in all, $23.”
We think the reasoning of the learned judge is conclusive upon the subject. Article 43, Code Prac., says that the lessee must declare the name and residence of his lessor, who, if he reside in the state, must defend in his place, and in that event the lessee is discharged. But defendants did not comply. with that provision of the law, even when plaintiff attempted to compel them to do so.
They were therefore not entitled to their discharge, nor did they ever ask for it. It was, of course, desirable that it should be done, and we think the judge a quo acted wisely, under the circumstances, in ordering that plaintiff seek out the alleged lessors and make them parties defendant, but that he did so, and that plaintiff was successful in finding those parties and bringing them in, was attributable to no effort or aid on the part of the defendants, who were therefore properly condemned to bear the burden which they had chosen to assume.
It is said that, “the judge a quo having found that the defendants were in good faith, nothing could be charged to them as rents and revenues, except from judicial demand.” The point is well made, but we are unable to concur with our learned Brother of the district court that the defendants were in good faith. They and their warrantor admit that they knew the Cutno family, and, knowing them, they also knew that the property in question did not belong to the two younger members, Ben and Earl. The act of sale, from Dr. Bringier to defendants *708 refers (as we have stated) to the lease as “the lease of Estate Glayfield Cutno” to Ur. J. T. Bringier for “Marchand Gin Co.,” and the parties knew that Ben and Earl did not represent the estate. Dr. Bringier says, in his testimony:
“I knew, at the time this matter came up to be sold, that Sarah Cutno [who was the_ natural tutrix of the plaintiff, though she failed to qualify] had refused to sign the lease, and Mr. Weil, to whom this property was being transferred, also knew, and we discussed that matter before the transfer was made. Q. You knew that Cassie was reputed to be one of these children, and her signature was not there,? A. Yes, sir.”
On the subject of the payment of rent, Dr. Bringier, being asked by counsel for defendant:
“During the time that you had the lease of this property, do you know whether the rent was paid?”
replied:
“Only by hearsay.”
He further testified that plaintiff never called upon him about the rent, and that her mother called but once, and he (the doctor) told her that his brother had paid Ben, and that he had nothing to do with it.
Jonas Weil, one of the defendants, testified, at one time, as follows:
“Q. Did you ever pay any rent on said land? A. We have. We paid to Cassie Cutno, at Lutcher. Her mother and Cassie Cutno, together, came and got $8 once; and if I am not mistaken $5, afterwards. Also on a Monday, she got $15 in the presence of Ben Cutno.”
Later in his examination, the following appears:
“I understand you to say that there was paid, at Lutcher, to Cassie Cutno and Mrs. Cutno, an amount for rent on that lease? A. It was paid to Cassie Cutno, and Mrs. Cutno was present. Q. Were you present at that time? A. No, sir.”
Counsel for plaintiff then moved that the testimony be stricken out, and it was so ordered, a circumstance which appears to have escaped the attention of the learned trial judge. We find, in the brief filed on behalf of defendant, the following as the sole reference to the improvements, to wit:
“The judgment makes no reservation in favor of defendants for the' improvements on the property, placed thereon by them in ^ perfect good faith.”
As neither plaintiff nor defendant in their pleadings pray for any decree with regard to the improvements, the omission complained of seems natural enough. Plaintiff’s prayer, that the amount allowed for the occupancy of the premises be increased, is not sustained by the evidence.
Eor the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by striking therefrom the credit of $23 allowed to the defendants, and, as thus amended, affirmed; defendants to pay all costs.
PROVOSTY, J., dissents.