**KEY v. JONES.**

No. 5614.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

T. H. McGregor, of Alexandria, for appellant.

Charles B. Emery, of Shreveport, for appellee.

### TALIAFERRO, Judge.

Plaintiff sues to be adjudged the owner of an undivided one-fourth (¼th) interest in and to the S. ½ of S. W. ¼ of Section 4, Township 17 North, Range 11 West, Bossier Parish, Louisiana, containing 80 acres, and grafts to his suit an attack upon a judgment of the Twenty-sixth District Court for Bossier Parish, rendered in suit No. 10,444, wherein Squire Simms, vendee of R. H. Moore, was decreed to own the identical interest in said tract herein sued for, and a partition in kind ordered, in so far as said judgment is favorable to Simms.

Ben Key, the plaintiff, married Susan Berry in Bossier Parish on February 10, 1881. One child, as issue of the marriage, survived, to-wit, Viola Key. She married one Walter Autrey. There were two children of this marriage, viz, J. C. (Elmo) Autrey and Willie B. Autrey.

· On February 13, 1888, Susan Key filed suit for divorce in the District Court of Webster Parish against Ben Key on the alleged ground of adultery. It is alleged in the petition that Ben abandoned Susan some six years prior thereto. The case was tried on February 20, 1888, and judgment of absolute divorce granted. Thereafter, to-wit, on March 1, 1888, Susan contracted marriage with Pete Henry. He passed from the stage of action prior to June 5, 1897. On that date she married one Richard M. (or H.) Moore, and they lived together for several years. He was indicted for murder in Bossier Parish and was acquitted of the charge on January 30, 1902. How long he and Susan cohabited thereafter is not definitely established. One witness is positive he was ordered by his landlord on or about March 1, 1903, to leave, did leave and did not return. Moore testified he left in March, 1905, to work for a telephone company, and did not thereafter cohabit with Susan. All the other witnesses are certain he left the place on which he was living prior to February 6, 1904, and we think they are correct; and this being true, the exact date of his leaving is immaterial.

On February 6, 1904, Walter Autrey and Susan Moore (formerly Susan Key) jointly purchased from R. M. Sandidge the said tract of land for $400.00. Thereafter, Susan "took up" with a man by the name of Mac Thomas. They moved on the land, improved it, and made it their home. She died thereon about the year 1915. Her sole heir was Viola Autrey. She married Edward Holloman after Autrey's death.

The above referred to suit, No. 10,444, was instituted by Squire Simms, vendee of R. H. Moore, against Viola Holloman and William and Elmo Autrey (the same as J. C. and Willie B. Autrey). The asserted interest of Simms in the land was resisted on the ground that Moore had no interest therein to convey to him. The court held adversely to this contention and decreed that the purchase by Susan Moore of a half interest in the tract fell into the community of acquêts and gains existing between her and Moore and, therefore, as surviving husband, he was entitled to one-fourth interest therein. The judgment recognizes the remaining three-fourths interest to be owned as follows: Viola Holloman ½; William Autrey ⅛; Elmo Autrey ⅛.

By the act of partition, Simms was allotted the S. ½ of the S. W. ¼ of S. W.

¼, containing twenty acres. He sold to E. Wayles Browne and Albert E. Bryson, the south half of the 20-acre tract, and to R. L. Jones the north half thereof. Browne and Bryson thereafter sold to Mrs. Elizabeth Jones, wife of R. L. Jones, the tract acquired by them from Simms. The other coowners were allotted definite parcels of the 80-acre tract. They and Mr. and Mrs. Jones were made defendants in the present suit. In reality, the Jones are the true defendants in the case.

The gravamen of the Jones' defense is (1) that the judgment of absolute divorce between Ben Key and Susan Berry Key, rendered on February 20, 1888, above mentioned, is legal and valid, and therefore, since the interest in the land in question was acquired by Susan long afterwards, Ben, her divorced husband, has not now nor has he ever had any interest therein; and (2) that should said judgment be held to be invalid and ineffective, plaintiff would take nothing thereby, so far as said land is concerned, because it was acquired during the existence of the marriage between Susan and Moore who, they assert, was in good faith in contracting the marriage with her; and therefore the marriage produced its civil effects; that as the putative husband, on the death of Susan, one-fourth interest in the tract devolved in ownership upon him. The other defendants admit the correctness of Key's demand.

Plaintiff did not attack the divorce decree between himself and Susan in his petition, nor by a supplemental petition, although it was specially pleaded by the defendants, Jones. He objected to its admissibility and to that of other papers in the suit on several grounds and vigorously supports the objection by brief. He challenges the good faith of Moore in marrying Susan.

The lower court rejected plaintiff's demands and he has appealed to this court.

If the judgment of divorce rendered by the District Court of Webster Parish on February 20, 1888, in favor of Susan Key is held to be valid, that will definitely terminate this suit.

■ The petition in said divorce was signed by Snider & Smith, as attorneys for Susan Berry, the plaintiff. It is not verified. Such was not required by law at the time. No citation issued thereon. It was put at issue by the filing of a purported answer by the defendant, Ben Key.

He was unable to write and therefore signed by mark. His signature is attested by one W. W. Jackson who, it is admitted, was dead at the time of trial. The attorneys composing said firm are also dead. The answer denied all the allegations of the petition, save the marriage, which was admitted. It was filed on February 20, 1888. Attached to the record in the suit is an affidavit of Joseph Dudley, signed before a deputy clerk of that court on February 20, 1888, wherein he corroborates the allegation of infidelity made against Key in the petition. This affidavit was filed as evidence in the case. The judgment, in part, reads that "by reason of the law and evidence being in favor of plaintiff and against the defendant * * * it is ordered, adjudged and decreed," etc. The record does not necessarily preclude the possibility that evidence supporting plaintiff's case, in addition to the affidavit, was introduced. Whatever the evidence introduced consisted of, it was deemed sufficient by the trial judge to warrant the judgment rendered and signed by it. This phase of the matter may not now be inquired into. Brigot's Heirs v. Brigot, 49 La.Ann. 1428, 22 So. 641; Miller v. Bearb, 134 La. 893, 64 So. 822.

Plaintiff's most vigorous point of attack on the judgment, and the only serious one in our opinion, is directed against the authenticity of the answer. Defendants, the Jones, challenge the right of Key to collaterally attack the judgment. Key testified he knew nothing of this suit and did not sign the answer, nor did he authorize anyone to sign it for him.

■ When the divorce suit was filed, it is certain Ben and Susan were living apart. He then lived in Minden and continued to reside there for two years. Mr. Joannes Smith, member of the firm of Snider & Smith, also lived in Minden. He was acquainted most probably with these negroes. In fact, as deputy clerk, he issued the marriage license under which they were joined in holy wedlock. The twelfth day after the divorce was rendered, Susan remarried and we are convinced that thereafter Ben married a woman by the name of Mattie Ferguson. A marriage license issued on December 17, 1890, authorizing the marriage of Ben Kea to Miss Mattie Ferguson. The act of celebration is incomplete. It is not signed by the parties. It is signed by only two witnesses and by one Elijah Baker, as officiating officer. Ob-

jection to the admissibility of the instrument was made on several grounds. It was admitted for what it is worth. No effort was made otherwise to prove the marriage, beyond the introduction of creditable evidence to the effect that Ben Key did live with a woman who went by the name of "Mattie", not far from Minden and about the time this license issued. We have small doubt, without so holding definitely, that the Ben Kea, named in this license, is the same person as Ben Key, the plaintiff, and that he married a woman under this license by the name of Mattie. The misspelling of his name may be accredited to the issuing officer. The doctrine of idem sonans applies. There was only one Ben Key in that part of the country at that time. This evidence is important only to raise a presumption or inference that Key felt that he was at liberty to marry again since released by divorce from his ties to Susan.

■ If plaintiff did not sign the answer filed on his behalf nor authorize its signing and filing, he is in the position of having not been cited in the suit by his wife for final divorce. A judgment rendered where no citation has been had and where the issuance and service thereof are necessary because of lack of waiver, appearance or answer of defendant, is an absolute nullity. Code of Practice, Article 606. Such a judgment may be attacked collaterally wherever and whenever it is sought to be enforced against one having an interest in seeing the nullity declared. This principle is well-embedded in the jurisprudence of the state, as is clearly shown from the following long line of cases: Bernard v. Vignaud, 1 Mart., N.S., 1, 8; Quine v. Mayes, 2 Rob. 510; Williams v. Clark, 11 La.Ann. 761; Simpson v. Hope, Sheriff, 23 La.Ann. 557; Bush & Goode v. Chapman, 24 La.Ann. 277; Alter v. Pickett, 24 La.Ann. 513; Decuir v. Decuir, 105 La. 481, 485, 29 So. 932; Andrews v. Sheehy, 122 La. 464, 47 So. 771; Wilkinson v. Wogan, 162 La. 133, 110 So. 176.

In Andrews v. Sheehy, supra, the court quoted the following principle announced in Alter v. Pickett, supra (page 773):

"It is a well-settled rule of jurisprudence, founded upon justice and common sense, that the absolute nullity of a judgment may be invoked before the tribunal where an attempt is made to enforce it, and by any person whose interests may be affected by the judgment."

The court said in the Simpson Case, supra:

"A judgment that has been rendered against a defendant without citation, is absolutely void, and the fact may be shown whenever and wherever it is sought to be enforced against him."

■ Therefore, plaintiff had the right to collaterally assail the divorce judgment in the manner he has done in the present case. By thus acting, the validity of the judgment vel non was tendered and defendants held the defensive on the issue. A judgment rendered and signed by a competent court should not be declared null save when the evidence clearly establishes good cause for the nullity; and especially should this rule prevail when it has remained on the public records and has been a part of the court's archives for nearly half a century, as appears in the present case. A court will view with searching scrutiny evidence intended to set aside such an ancient judicial order. If the bare testimony of a litigant in such circumstances, wholly unsupported, is to have such controlling influence, then the stability of judicial proceedings may easily be undermined and the security which should flow from solemn judicial decrees materially impaired or utterly destroyed.

■ Ben Key knew Susan married Henry and Moore and registered no objection thereto. He knew she and Autrey purchased the land in question and knew she lived and died thereon. He remained silent until the present suit was filed and until after the land doubtless had attained a value not theretofore had before attempting to recover an interest in it. His divorced wife, daughter and grandchildren frequently visited him in Shreveport over a period of many years, when he was evidently living in concubinage with another woman, yet he raised no question about Susan's marital relations with other men nor intimated a claim of ownership in the land. The lips of all persons having personal knowledge of and contact with the divorce proceedings are silent in death. They may not now be heard to dispute the belated testimony of Key, which would seek to destroy the integrity of this divorce decree. To accept his testimony at face value would necessarily stigmatize the record of the reputable firm of lawyers who represented Susan in the case. It would convict them of practicing a rank fraud upon the court of which they were a part.

It should require evidence of a most dependable and convincing character to warrant a court to do so. We shall not do so.

The lower court's conclusion on this vital question of fact should not be disturbed unless stronger reasons could be assigned therefor than we are able to give.

For said reasons, the judgment of the lower court is affirmed, with costs.