No. 13,783.

WILLIAM H. HOWCOTT vs. GEORGE S. PETIT.

SYLLABUS.

1. In a petitory action, the defendant is bound to plead all the titles under which he claims, and cannot evade the judgment rendered in such action by setting up a title which he might have urged by way of defense thereto.

2. The case is the same where, the defendant being the real party in interest, the title subsequently relied on stands in the name of another person who holds as his representative and for his accommodation and account.

3. In interpreting a petition, in order to determine whether it discloses a cause of action, all of the allegations are to be considered together and with reference to the prayer.

APPEAL from Civil District Court, Parish of Orleans—*Ellis, J.*

*Richardson & Soule, William Winans Wall* and *Kernan & Gowland,* for Plaintiff, Appellant.

*George W. Flynn,* for Defendant Appellee.

*John P. Sullivan,* for Warrantor, Appellee.

## STATEMENT.

The opinion of the court was delivered by

MONROE, J. The petition in this case, interpreted in conection with the exhibits annexed to, and made part of, it, alleges: that, in June, 1893. Henry C. Dibble brought a petitory action against Joseph D. Taylor, praying to be declared the owner of certain real estate in New Orleans. of which Taylor was in possession and of which he claimed to be the owner by virtue of certain tax titles; that, in March, 1895, there was judgment in favor of said Dibble and against Taylor decreeing the former to be the owner of the property and annulling the tax title set up by the latter, which judgment was affirmed by the Court of Appeal upon February 7th, 1896; "that, after said judgment was rendered, and pending the appeal therefrom, the said Taylor produced an adjudication by the State tax-collector, on the 7th day of November, 1889, under Act 82 of 1884. in the name of J. C. Molyneaux, and caused an act of sale to be passed from the State tax-collector to said Molyneaux, on the 31st day of January, 1896, * * * and caused it to be recorded on the 4th day of February, 1896. * * * Petitioner avers that said title was a fraudulent simulation and was made *pendente lite,* and said tax adjudication was made to one Peter Molyneaux, acting for said Taylor, himself, as will appear by his sworn testimony in Exhibit 'C'" (annexed to and made part of the petition), "and the said tax title was placed in the name of said, James C. Molyneaux for the purpose of evading the effect of said judgment against the said Taylor, and it was afterwards placed in the name of said George Pettit, for the same purpose. That said Pettit could acquire no legal title from said Molyneaux, who had none, and said sale was in violation of Article 2453 of the Revised Civil Code. and was not an innocent purchaser, and he paid nothing for it, and took said property *in fraudem legis,* in his name, without inquiring as to the title. without seeing it, and only to accommodate said Taylor."

\* \* \* \* \* \* \*

The prayer is, that the petitioner be held to be the owner of the property and that the title set up by Pettit be decreed a fraudulent simulation, or annulled as fraudulent. The defendant, Pettit, filed an exception of no cause of action and a plea of estoppel, and, afterwards, filed an answer calling J. C. Molyneaux in warranty, and Molyneaux, having been, in the meanwhile, interdicted, appeared through a *curator ad hoc,* and also excepted, on the ground that the petition discloses no cause of action. These exceptions were overruled, but the case was then transferred to another division of the Civil District Court, the judge of which reinstated them, to be tried with the merits, and, thereafter, maintained the exception of no cause of action, and dismissed the suit. whereupon the plaintiff appealed.

## OPINION.

We are of opinion that the judgment appealed from is erroneous. Taking the averments of the petition to be true, the plaintiff's author. Dibble. sued Taylor for the property in controversy and thereby subjected him to the necessity of setting up whatever titles he may have expected to rely on. Taylor, according to the petition, was, at that time. the real party in interest in the matter of the adjudication of November 7th. 1889. the adjudicatee having been merely his agent and representative. who allowed the use of his name for the accommodation of Taylor. and. for his accommodation, transferred the title to Pettit, who allows his name to be used for the same reason; so that, upon the face of the papers, it appears that the title under which Pettit now claims the property is held for the account of Taylor, and was so held by Molyneaux when the suit brought by Dibble was tried and decided, and it, therefore. appears that Taylor, through Pettit, is now setting up a title, after final judgment against him. which he was bound to set up as a defense to the suit in which that judgment was rendered.

This is inadmissible.

"In a petitory action the defendant is bound to plead all the titles under which he claims to be owner, and a final judgment rendered in favor of plaintiff may be pleaded as *res adjudicata* against any title which the defendant was possessed of at the time. but omitted to plead." Shaffer vs. Scuddy, 14th Ann. 575.

"Courts of justice, in stating the rule, do not always employ the same language, but, where every objection urged in the second suit was open to the party, within the legitimate scope of the pleadings, in the first

suit, and might have been presented in that trial, the matter must be considered as having passed in *rem adjudicatem*, and the former judgment, in such case, is conclusive between the parties." Aurora City vs. West, 7 Wall. 82.

If it be true that Molyneaux held, and that Pettit now holds, the title which the latter sets up, Pettit may defend, upon the merits, upon that ground. But if Pettit is merely Taylor under another name, it makes no difference whether such title was derived from the State or from Dibble, himself, or from any other source, the result is the same; for, if Taylor wished to rely on it for the purpose of showing, as against Dibble, or those claiming under him, an outstanding adverse title, whether in himself or in some other person, or in the State, the time for him to have urged it was when he was called upon to defend the suit in which Dibble alleged that he held a better title than Taylor, or anyone else. And, failing to urge it at that time, he cannot be heard, either in his own name or in the name of another, to urge it now.

"But," it is said, "this is not a question of title set up by way of defense, but of an outstanding adverse title set forth by the plaintiff, himself, upon the face of his petition, from which it appears, from his own averments, that he is not the owner, and has no standing in court to prosecute a suit for the recovery of the property claimed by him." And, if we could accept the interpretation which the defendant's counsel place upon the petition of the plaintiff, we should be compelled to recognize the force of their deductions. That is to say, if we considered that, upon a fair construction of the plaintiff's petition, he intended to say that the title to the property in question became vested in the State by virtue of the adjudication of November 7th, 1889, and has never been divested since that time, but that the conveyances, from the State to Molyneaux and from Molyneaux to Pettit, were fraudulent simulations. *quoad* the State as well as the transferrees named, there would seem to be no answer to the proposition that, such averments being taken as true, it must follow that the State is still the owner of the property, and hence, that the plaintiff, who makes those averments and yet sues to recover the property, discloses no cause of action. But, we do not interpret the plaintiff's petition in that way. We understand it to mean, not that the State was, or is, involved in the simulation charged, but that the State has parted with its title to the property and that the simulaion was, and is, a matter between Taylor and the adju-

dicatee and transferree, who represented, and stood for, him, for the purposes of the adjudication and transfer.

It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed and that this cause be remanded to be proceeded with according to law, the costs of the appeal to be borne by the appellee and those of the lower court to await the final judgment.