(43 South. 163.)

No. 16,325.

LISSO et al. v. DEVILLIER.

(Feb. 18, 1907.)

PUBLIC LANDS—RAILROAD GRANTS—ACTUAL SETTLERS—RIGHTS.

Under the proviso of section 2 of the act of Congress of February 8, 1887 (24 Stat. 391, c. 120), all lands occupied by actual settlers, of whatever kind or class, at the time of the definite location of the road, etc., were excepted from the grant to the New Orleans Pacific Railway Company, which was not concerned with the rights of settlers quoad the government.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, §§ 244–246.]

(Syllabus by the Court.)

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; Benjamin Henry Pavy, Judge ad hoc.

Action by Paul Lisso and Bertrand Weil against P. O. C. Devillier. Judgment for defendant, and plaintiffs appeal. Affirmed.

White & Thornton & Holloman, for appellants. Edward Benjamin Du Buisson, for appellee.

LAND, J. This is a petitory action to recover fractional section 61, township 6 S., range 5 E., containing 95.81 acres, situated in the parish of St. Landry.

Plaintiffs claim title through mesne conveyances from the New Orleans Pacific Railway Company, which entered the land under acts of Congress of March 3, 1871 (16 Stat. 573, c. 122), and February 8, 1887 (24 Stat. 391, c. 120), and secured a patent to the same on March 13, 1896.

Defendant claims title by virtue of mesne conveyances from Luke Collins, who is alleged to have acquired his title under a Spanish grant confirmed by act of Congress, as recommended for confirmation by report A No. 40, American State Papers, vol. 4, p. 501. Defendant pleads the prescription of 10 and 30 years, and in the alternative prays for judgment, in case of eviction, for the value of his improvements, alleged to be worth over $5,000.

There was judgment in favor of the defendant, and the plaintiffs have appealed.

Plaintiffs' chain of title is not disputed. Defendant's chain of title and possession thereunder of himself and authors for more than 30 years are admitted, but plaintiffs contend that the particular parcel of land in controversy was not embraced in the original grant to Luke Collins. On the question of possession, the evidence shows that the heirs and assigns of Luke Collins have been in the actual possession of the property in controversy from time immemorial. It is admitted that such possession has been "open and notorious and undisturbed for more than 30 years." The record discloses that three surveys of the grant in question have been made, the first in 1820, the second in 1824, and the third (resurveys) in 1853 and 1875. The second survey was the last official survey made by the government prior to the act of 1826 confirming the grant to Luke Collins. The district judge states in his opinion, and it is not denied, that the second survey included the land in controversy in the grant to Collins. For the first time fractional section 61 appears on the plot of 1875.

The district judge further held that the land in controversy was excluded from the railroad grant, as per act of Congress of February 8, 1887, by the proviso of the second section, which reads as follows, to wit:

"Provided that all said lands occupied by actual settlers at the time of the definite location of said road and still remaining in their possession or in possession of their heirs or assigns shall be held and decreed excepted from said grant and shall be subject to entry under the public land laws of the United States."

The district judge was of opinion that the defendant and his authors, who actually occupied the land at the time of the definite location of the railroad, and who have con-

tinued to occupy the same ever since, were "actual settlers" in the sense of the proviso of the statute. Plaintiffs' reply that the term "actual settlers" means only those qualified to make entries under the homestead and pre-emption laws of the United States, and cite a number of rulings of the United States Land Department to that effect. Such executive rulings are, however, merely persuasive; it being that peculiar province of the courts to construe statutes. The proviso could not be broader, as it embraces all lands occupied by actual settlers, without distinction or limitation. Section 4 of the same act refers to persons who occupied lands at a particular time and were entitled to make homestead or pre-emption entries, and special provisions are made in such cases. If Congress intended to confine the benefit of the proviso to such classes of settlers, why was not appropriate language used to express such intention, and why was the benefit extended to heirs and assigns, without limitation? The statute was a donation of public lands for railroad purposes, and the proviso expressly excepted from the grant all lands occupied by actual settlers, and declared such lands subject to entry. The actual occupancy of such lands excepted them from the operation of the grant, and the rights of the settlers quoad the government did not concern the grantee.

We can find nothing in the proviso to warrant the construction that the reservation of public lands was to be determined, not by the earmarks of actual occupation, but by the inchoate rights of the particular settler. The latter construction would have involved an inquiry and determination before the Land Department of the legal status of every settler within the limits of the grant. The statute makes no provision for such an inquisition.

We are therefore of opinion that the mere occupation of lands within the grant by actual settlers at and for the time specified in the proviso operated as a full and complete reservation, regardless of the legal rights of the particular settlers. Congress did not undertake to limit the proviso to particular classes, and it would have been very unwise to have done so. In this very case the defendant and his authors have possessed in good faith from time immemorial under claim of title emanating from the sovereign. In the case of Same Plaintiffs v. Dejean S. Fontenot (this day handed down) infra, the defendant purchased from the state of Louisiana, claiming title under the swamp land grants of 1849 and 1850.

Conflict between United States and state patents have been of frequent occurrence in the state under said grants, and Congress has from time to time been compelled from a sense of equity to confirm the titles of purchasers. A similar uncertainty has existed as to the location of Spanish grants, and there have always been cases of errors and mistakes in the entry of public land. The bona fide possessor of public lands, who believes himself the owner, has an equity in his favor, and his honest mistake should not prevent him from being considered an "actual settler" on the public domain, in the sense of the proviso in question, which was enacted with reference to lands situated in this state and presumably with the knowledge of local conditions.

Judgment affirmed.