BREAUX, C. X
This is a suit for separation from bed and board.
It is the third suit growing out of disagreements between plaintiff and defendant.
There was talk of still another suit in 1905, which was never brought.
In the first and second suits defendant Rere was plaintiff.
The cause of action in the first and second suits was the alleged abandonment by the plaintiff, Mrs. Le Blanc, of the matrimonial domicile.
The cause of action here is in substance that her husband has been guilty for years ■of excesses, cruel treatment, and outrages as to render their living together insupportable, Injurious to health, and fatal to all happiness. Going into details, plaintiff’s petition •■sets forth different acts committed by her husband, all in support of the general averments of her petition. The petition alleges with particularity that defendant ill treated plaintiff, and details acts of asserted ill treatment committed a few days after their marriage, and complains of a number of other :acts committed since. She avers that she was neglected by^ him ; left suffering from illness when she was in need of sympathy; that he was severe and cruel to their children; that he was violent toward her — struck her; that •she had broken her arm in February, 1907; that she undertook to correct one of their children, when defendant rushed into the room, •seized her by the arm which had been recently broken, held a riding whip over her, at the same time calling her a brute.
The defense by the husband is that he has ■never committed any of the acts of which plaintiff complained; that, on the contrary, he has always sought her happiness and ■.that of his children.
1-Ie refers specially to the two suits instituted by him on the grounds of abandonment, and states that plaintiff became reconciled after these suits; that she sought this reconciliation ; that there was forgiveness on the part 'of each, and all had been smoothed over, and a condition of contentment existed. He annexed letters to his answer received from plaintiff.
The letters of plaintiff preceding the year 1906 were kindly and affectionate in tone, and expressed a desire to return, and the joy of the children when informed of their return at an early date to their home. These letters were written previous to and about the time of the reconciliation to which we will refer later; that is, after it had been wisely concluded to drop court proceedings (i. e., in the matter of the first two suits), and return home and live together.
In the year 1905, plaintiff and her husband went to Colorado Springs.
Not many days after they had been there, there was quarreling, angry disputes, and scoldings.
Supplemental Petition was Properly Allowed.
About eight days after the issue had been joined in the pending case, plaintiff filed a supplemental and amended petition alleging other grounds for a separation from bed and board.
The defendant interposed an objection to this supplemental petition, on the ground of want of citation, and on the ground that it was a new cause of action not timely urged.
We deem it in place to state that the answer, in which the defendant pleaded a reconciliation between plaintiff and defendant, covering a period of the married life to and including part of the year 1905, made it necessary, as plaintiff must have thought, for plaintiff to seek to meet defendant’s allegations by alleging other acts of a date which she averred was since the reconciliation.
*924 The original petition contained a long list of averments sufficient, if proved, to sustain the suit.
This supplemental and amended petition was in the nature of a replication to the answer, if it was anything.
It having been allowed, the petition presents no ground at this time to set aside the judgment. The courts of original jurisdiction have discretion in matter of amendments.
The want of citation, another ground urged by defendant, is a purely technical ground, affording no reason at this time to remand the case. The prayer of the petition remained the same and the ground of action as it was originally ; it only added to the allegations; averred grievances not before alleged. There were specific allegations to the end of enabling plaintiff to make out the general allegation of plaintiff that she could no longer remain at the matrimonial domicile.
In reference to the want of a cause of action, made part of .the defendant’s exception, we overrule it for the reason that the allegations of the petition, taken as true for the decision of the exception, amply shows a cause of action.
Next in order, we will consider,
The Pleas of Estoppel and Res Judicata.
The defendant urged in support of these pleas two suits which he brought in the year 1902 for separation on the ground of abandonment.
The first was instituted in January of that year, and the second in June following.
In the 'first suit, after three reiterated summonses, defendant (plaintiff here) in accordance therewith returned to the matrimonial domicile, and she again having left the matrimonial domicile again returned in the second suit after she had received summonses to return.
In the second suit, a judgment was rendered after three summonses had been served. It was after three notices of this judgment had been served on her that she returned.
The agreement to institute suit on the-ground of abandonment between plaintiff and. defendant is limited to the second suit; that is, we take it that as to the second suit it was pretty well understood that the purpose was as much as possible to avoid the-publicity of the family troubles.
These suits are pleaded as estoppel and res judicata. We are of opinion that they are neither. The grounds of action were different. Those alleged in the present suit never were alleged in the prior suits.
The testimony divests particularly the second of these suits of the seriousness that suits should have in order to give rise to-the plea of res judicata. Moreover, neither-of these suits can be considered in the light of res judicata, for they are not.
In reference .to estoppel, we are equally as positive that plaintiff is not absolutely concluded from proving antecedent facts (i.. e., facts anterior in date to the reconciliation hereafter referred to) going to corroborate her grounds of action in ■ the present suit. The antecedent facts are not ground for a divorce, but they may be considered as corroborative.
There was reconciliation in 1905, about June, and by reason of this reconciliation all acts prior (the letters in evidence preceding that date and the suits) will be considered' exclusively as corroborative evidence, and will not be taken as distinct grounds affording cause for a judgment of separation from; bed and board.
Testimony Not Before the Court.
The testimony excluded in our opinion was; properly excluded.
These are the facts on this point:
Counsel for defendant, while defendant’s-brother was testifying, expressed the desire,. *926 in answer to an inquiry of the court, of proving that plaintiff had been indiscreet. The acts of indiscretion were detailed.
Counsel for defendant added that the testimony was offered only to prove indiscretion of plaintiff, that defendant did not charge misconduct, only indiscretion, and by his own statements the husband offered to prove the effect that the acts of indiscretion of his wife had upon him.
The plaintiff through counsel objected to the testimony; the objection was sustained, and the testimony excluded.
After the court had announced its ruling, and had excluded the testimony, plaintiff’s counsel recalled his objection, sustained as just mentioned, and offered to let the testimony be introduced with one exception; that the testimony to prove indiscretion should not be that of the husband.
The court then offered to permit counsel for defendant to introduce evidence of indiscretion to prove the occasion for the husband’s conduct, provided always that this should not be proven by the statement of the husband to his brother, still a witness.
At this point, plaintiff’s counsel offered not to object to any testimony of plaintiff’s misconduct if that was the object, in lieu of “indiscretion,” provided that the testimony offered to prove misconduct should not be that of the husband, a provision which the court sustained.
The proof of misconduct was not the purpose, defendant’s counsel stated. Indiscretion was the charge.
Counsel for defendant declined to offer the testimony under the limitations just stated, he averring at the time that it would serve no good purpose if he were to prove that the plaintiff was indiscreet if he was not at the same time permitted to prove the statement of the husband as to the effect it had upon him.
It does not occur to us that the statement was contemporaneous and that it possessed the other requirement for it to be considered part of the res gestm.
That rule of evidence is sometimes made to do extensive service, so much so that a text-writer has said that the shibboleth, res gestee, is put to such indiscriminate service that it is to be approached with a feeling of despair.
It was never intended as authorizing the use testimonially of the husband’s statement to prove that his wife was indiscreet, and the effect that it had on him.
The foundation must first be laid — it was not — and then testimony is admissible to prove the effect. This was not done. The offer has the appearance of a stop half way. It was not followed up sufficiently to justify a reversal of the judgment. No attempt was made to prove the facts going to show indiscretion, nor the dates. These might have-brought the offer within the rule invoked.
Condonement and Reconciliation.
These pleas do not present grounds for excluding all the testimony preceding the condonement and reconciliation. Plaintiff or defendant may prove acts preceding reconciliation to the end of coiroborating the new grounds alleged, if they are proven. Rev. Civ.. Code, art. 153.
If a cause subsequent has arisen, plaintiff is then authorized to urge a cause precedent. Bienvenu v. Her Husband, 14 La. Ann. 387.
If the cause appears well-grounded we wilt then review the corroborative testimony.
We will therefore consider the testimony-relating to the new grounds alleged.
Summary of the Pacts.
A closely litigated case requires that the-salient details be gone into, otherwise the opinion would not have the support needful in the discussion and for the decree.
We thus state for the reason that until we-reached this point we thought of avoiding a *928 narrative of the facts. Now we think we ■should review them to an extent at least.
After the reconciliation in Virginia in June, 1905, which must have given rise to the hope that it would be permanent, the plaintiff wrote several letters, to which we before alluded, to the defendant, in which she expressed the pleasure she felt in returning to her home and her family, and in another she said that she would do all that a loving wife should do.
The reconciliation was short lived. In the month following, the family left for Colorado Springs. Plaintiff’s sisters accompanied her, and they met relatives and friends at the Springs. It soon became evident after their .arrival that reconciliation was of the past. Disagreement and dissensions arose. The brother of defendant was at the Springs a few days of the time that plaintiff and defendant were there. He noticed with regret that there was restraint and coolness between plaintiff and defendant.
While aS' a witness, in answer to questions, he spoke of his brother and referred to his temper, he did not dwell upon that testimony.
We infer from the testimony that he thought that his brother has high temper, which he does not always control; otherwise he was kindly and conciliatory.
The testimony of this witness was considerate to both plaintiff and defendant. He certainly entertained, we judge from the testimony, brotherly regard for the defendant, .and he said as to plaintiff’s relatives, who were with her at the Springs, that they were in every respect ladies of refinement and ■education.
The testimony of one of plaintiff’s sisters ¡shows that early in the night at times plaintiff and her two sisters and others walked out in the moonlight at Colorado Springs to enjoy the early part of the night strolling away from the hotel some little distance. These evening walks were the cause of some of the disagreements between plaintiff and defendant.
Card playing was another source of disagreement. It displeased the defendant particularly, as he thought that plaintiff did not wish him to be one of the party while playing cards.
The sister who testified upon the subject said that these card parties should have given to defendant no ground for displeasure; they were innocent games for amusement. That the defendant’s thought that there was a desire to exclude him was error.
Plaintiff sought the advice of attorneys while she was at the Springs, and we infer from the testimony that she spoke freely to her sisters in regard to her alleged grievances.
These sisters, as witnesses, state that defendant at the Springs never entered their room without starting a quarrel, and saying disagreeable things which were unbearable to plaintiff. They would close their doors in order not to hear the defendant fussing with his wife.
About this time things reached a climax. One of these witnesses testified that plaintiff called on her late in the night, knocked at her door crying, saying that defendant had scolded her for quite a while and had kicked her out of bed. She begged one of her sisters to go and talk to him, because she could stand it no longer. The sister comifiied, and said to defendant that he had not kept his promise to be good and kind to her sister when she returned; that defendant ordered her, that sister, out of the room, saying that he had paid for it.
The plaintiff remained that night in her sister’s room until she became quiet, and then went to another room for the night.
On the 10th of October, 1905, plaintiff wrote to her husband (who had returned to their home in Louisiana). There was nothing unusual in the letter. Two days later, *930 she wrote again, and in this letter the expressions disclosed deeply wounded feelings. She reminded the defendant of his promises. She referred to her honor, which she was determined to uphold to the last. She asked-him in serious tones about that which had happened at the “Plaza”; if he recalled his utterance on the “porch” just before leaving, and other similar expressions.
About eight days afterward, defendant replied calmly and deliberately. He mentioned his surprise on receiving the letter, and said that the complaints were frivolous, and that she might return home when she wished, and added that this time there would be no divorce proceedings in court unless she began them. He earnestly referred to his children and of their future.
Both the letters, of which the foregoing is a mere summary, denote deep feeling.
On the 1st of November following, she returned to her home.
Prom this time on to the summer following the testimony discloses nothing of moment. There was a lull at the matrimonial home.
The year following, .plaintiff and her husband and their children went to one of the summer resorts within the limits of the state. They together enjoyed themselves. There were the usual walking, driving, and all seemed to share the amusements and the recreations the place afforded. To all outward appearance there was nothing to denote disagreement of any kind, and yet at this place, a witness, who was of the party, testified that she heard defendant speak harshly to his wife; that there was loud talking in their room; that it was a continuous quarrel, misunderstanding, contention about something always; that she heard plaintiff say to her husband, “Sam, you nearly run me crazy. 1 wish you would go away from me and let me alone.” That plaintiff often cried and was exceedingly nervous.
This witness was at Covington during part of the summer, and states that there was less dissension at this place than there had been at home, but there seemed at all times to be disagreements; “always unkind, always rough.”
On the first of the year 1907 the family sat around the same board and enjoyed together the usual first of the year dinner. Presents were made by defendant to plaintiff. During the carnival of 1907, they were at a ball together, and were partners in one of the dances. There were fishing and hunting parties at which they were present.
Defendant at about this time- became the owner of a pleasure boat and called it by plaintiff’s name.
On the last pleasure excursion testified to by witnesses, plaintiff and defendant were to be of the party; defendant went. Plaintiff gave some reason and remained at home, packed her effects, and left her home with her children. On his return, plaintiff’s petition -for a divorce was served on defendant.
All during the time included within the foregoing statement, according to some of the testimony, there were disagreements, gloom, unhappiness in the family. There was suffering on the part of each, as we infer, which would not down. There was incompatibility between the two, difference in their natures.
When defendant kindly informed plaintiff that he had given to their pleasure launch her name, it was not welcome news to her; she was unconcerned and did not approve. On the contrary “there was loud and angry talking heard at home among the parties,” said a witness who resided near defendant’s heme in the town of Plaquemine on the same street. The aunt of the witness, who was with plaintiff and defendant and their children at Covington, testified that she called at their home; defendant was out of humor and expressed displeasure; that to her, as a visitor, it gave rise to some embarrassment; that plaintiff was ill and confined to her bed. .She *932 seemed delirious and to dread defendant’s presence.
At another time witnesses testified that defendant threw the small bones of a squirrel in plaintiff’s face while in anger. One of the witnesses while testifying about this incident said that plaintiff laughed, but it conveys the impression that it was all serious. They attended a musical or play that night, whether together or not does not appear.
At the same time there were heated and angry utterances about the children, which gave rise to bursts of anger and violence.
The foregoing all relates to incidents since 1905, the date of the asserted reconciliation.
We have, in addition to considering the testimony since the reconciliation, closely considered the testimony of facts preceding the reconciliation to which we have before referred. It is corroborative. The testimony shows that- for many years plaintiff and defendant disagreed at times, and that. their married life was not one of union and peace. The disagreement is directly corroborative.
We will not dwell upon the details of the testimony of that date. It is only corroborative, and for that reason we refer to it in general terms as showing a condition of things about similar to that succeeding the reconciliation.
One of the sons, a small boy, as the attorney was about to begin to examine him as a witness was crying. Kindly the attorney said to him (calling him by his name):
“What is the matter? Are you afraid?”
“No, it was not fear,” was the reply.
He testified in general terms. The sister also testified.
Referring to an incident, the younger of the two little brothers, aged about 7 years, testified:
“He wanted to hit her.”
Again:
“Mamma would do some quarreling and papa.”
“Q. Both did the quarreling?
“A. Mamma never did the most.”
We will decide the cause without further reference to the testimony of the children of the marriage. It is true enough, doubtless; we none the less pass it without further comment.
Hearsay Testimony.
We will state at this time that hearsay testimony was admitted for plaintiff, of which defendant complains. We will not consider that testimony in the least, and propose to get rid of the ruling by not taking it into account on appeal. This we consider the most practical way of disposing of the objection.
We must decline to remand the case to afford opportunity to the district judge of reviewing the ruling complained of. From our-point of view it would not change the result.
To admit the testimony would give to the “indiscreet” in question before referred to an importance that the facts and circumstance» do not justify.
Discussion of the Issues.
After a careful study of the testimony, we close the record, convinced that plaintiff and defendant cannot agree. The testimony creates the impression that they have sought to-agree one with the other without success.
About 20 years ago they were married; children came to them — 3, 2 boys and a daughter. The father and mother were fortunate. Beginning with little, they accumulated at least a competency. He was reasonably economical. He provided his family with the comfort and even with some of the luxuries of life. They visited the summer resorts in Virginia, Colorado, and this state.
In Colorado, the feeling between them became quite acute. We have seen that the observable coolness between them attracted the attention of defendant’s brother who was present, and who stated as a witness that he regretted to see it.
There was' no pleasure found in each oth *934 er’s company, and. in the absence of one from the other there was evidently complaint. The skeleton closet was opened, and nothing seems to have been kept back on either side in the way of complaint.
In our statement of the facts, we have given the particulars of the letters written from Colorado Springs.
If it be true, as stated in the testimony, that plaintiff was compelled to leave the room late in the night at Colorado Springs, it is not strange that she felt hurt. It is common knowledge and may be mentioned that a great many wives, ordered out in the way that the evidence shows plaintiff was, would have stayed out, never would have returned, and this without caring particularly about proceedings in court. While complaining in her letter, she made no reference to the ejectment from the room. Silence does not disprove nor condone.
After her return to her home in November, 1905, quiet and peace prevailed, but that was temporary. The trouble broke out again during the next summer and seems to have been continuous.
There have been unhappiness, quarrels after quarrels, alternating with apparent sunshine and cheerfulness. These quarrels have been of so great and so persevering a character that they afford some ground for action. They had brought on unreconeilable animosity, we infer.
Now, as relates to the sunshine and cheerfulness, they were temporary, and afford no ground to determine that there was reconciliation. Whatever feeling influenced plaintiff, apparently quiescent to the date that she left the matrimonial domicile, does not indicate that ,the trouble had been forgotten. Attempts at reconciliation and endeavor to avoid publicity are not condonement.
The education, the habits of the parties, their sentiments, must be taken into consideration.
Both, as relates to education and habits and sentiments, are about on the same plane.
Recalling the acts proven, the manifestations of most violent temper, the expressions and the extremes to which (it is true only for a moment) that violent temper went, also recalling from the testimony that which we consider corroborative (that is, of the testimony preceding the reconciliation), the outbursts of feeling on the part of the defendant, the manifestations of uncontrolled irritation, we have concluded as relates to the separation to affirm the judgment of the district court. On account of the ill temper to which we have referred living together was unsupportable. The extreme excess as relates to violence, though doubtless a source of regret to defendant, amounted to cruelty, to disturbance of the peace of mind of plaintiff, to the aggravation of the nervous condition, and all destroyed the legitimate object and purpose of matrimony. Keezer, § 112.
There are acts preceding the reconciliation that go far toward corroborating the violence complained of since its date. The situation did not justify the outburst of temper the testimony proves.
Counsel for defendant complains of the judgment on the ground that it does not decree that the defendant shall have his separate funds. To this our answer is:
The parties are referred to a notary by the judgment appealed in order that a partition may be made. Of course, in making the partition each must have his and her separate funds. It will be the duty of the notary to fix the amount, and then the community will be divided. This is the intent of the decree.
As Relates to the Children.
They were placed in the care and custody of the plaintiff. In this respect, the judgment will be amended, and, to the extent possible, article 157 of the Revised Civil Code will be enforced.
*936 For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed in all respects except as to the children. As to .them, it is ordered, adjudged, and decreed that it be annulled, avoided, and reversed to the extent that it unconditionally places the mother in their charge. It is further ordered, adjudged, and decreed that a family meeting be called, and that the judge of the district court, if it be deemed to the greater advantage of the children, with the advice of a family meeting, order that some or all of the children be intrusted to the care of the other party (i. e., the defendant). That appellee pay the cost of appeal.