**OPELOUSAS–ST. LANDRY SECURITIES CO., Inc., et al. v. UNITED STATES et al.**

No. 6535.

Circuit Court of Appeals, Fifth Circuit.

June 19, 1933.

E. B. Dubuisson and L. L. Perrault, both of Opelousas, La., for appellants.

Philip H. Mecom, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is a suit like that of United States v. New Orleans Pacific Railway Company, 248 U. S. 507, 39 S. Ct. 175, 63 L. Ed. 388. It was brought by the United States in the interest of one Annie Jason, an actual settler on public lands in Louisiana, to secure to her the benefit of the Federal Act of February 8, 1887,[1] and to enforce in her behalf the provisions of the agreement of August 3, 1892, between the United States and the trustees of the New Orleans Pacific Railway Company.[2]

The bill adequately alleged that when the land described in it was patented to the railway company it was occupied by and in the possession of Lewis Andrews and his wife, Annie Jason Andrews, actual settlers and qualified to enter public lands of the United States. It further alleged the application of Andrews on March 18, 1920, to enter the said tract of land as a homestead, the suspension of the application by the Secretary of the Interior on account of conflict with the railway company's patent until March 24, 1926, when the matter was finally determined in the Land Office in favor of the settlers. The prayer was that plaintiff have judgment canceling and declaring null and void the patent to the lands in suit, and in the alternative, for a decree requiring the defendants, as trustees for Annie Jason, to execute a deed to her. The defendants, remote vendees of the railway company under the patent granted to it on December 28, 1892, appeared and first by motion to dismiss, later by answer, pleaded that the suit of the United States to annul the patent was barred by the five years' statute of March 2, 1896 (29 Stat. 42, 43 USCA §§ 900 and note, 901, 902), and that its suit for the use and benefit of Annie Jason was barred by the judgment which she had suf-

---

[1] Section 2 of the act provided: "That all said lands occupied by actual settlers at the date of the definite location of said road and still remaining in their possession or in the possession of their heirs or assigns shall be held and deemed excepted from said grant and shall be subject to entry under the public land laws of the United States." (24 Stat. 391.)

[2] "That in the cases where patents have issued to said railway company for lands which have or may hereafter be adjudged by the Commissioner of the General Land Office to have been in the possession of actual settlers at the date of the definite location of said railway company's road and title is in said railway company, said trustees agree to make, without delay, conveyance thereof to the United States, and where such have been sold by said railway company to third persons the company undertakes to recover title thereto without delay and convey the same to said settlers or to the United States."

fered to go against her in a petitory action in which her title was put at issue.

Some three years after the suit was filed, Annie Jason intervened in the action. She set up the facts substantially as the United States had done, and alleging further that she had never surrendered but had constantly maintained her possession of the land in suit, joined in the prayer of the United States that defendants be decreed to be her trustees, and required to execute a deed to her. Reference to a master resulted in findings of fact and of law favorable to plaintiff and intervenor on their alternative demand that defendants be decreed to hold the title in trust for Annie Jason, and a recommendation that they be directed to make her a deed. The District Judge in the main overruled the exceptions to the master's report, and confirming his findings in substance, entered the recommended decree.

█ The case comes here on one point, the claimed error of the court in not sustaining the plea of res judicata based on the judgment of the state court in the petitory action. The facts regarding this action are all of record. They are: On February 12, 1924, while the contest over the application by Lewis Andrews as a homesteader on this land was still pending in the Department of the Interior, the Opelousas-St. Landry Securities Company, and other defendants, filed their petitory action against Annie Jason, widow of Lewis Andrews, alleging themselves to be the owners and entitled to the possession of the lands in controversy. On March 19 Annie Jason filed her plea of lis pendens, informing the court of the pendency in the Department of the Interior of the contest over the application of Lewis Andrews, and that should it be decided in her favor, patent would issue to her, and praying that plaintiff's suit be dismissed. No action appears to have been taken on this plea. On the same day she filed her answer, which consisted of a plea of prescription of ten, twenty, and thirty years, and a claim for the value of her improvements. Though the record contains no statement of the evidence adduced, the judgment recites quite fully what occurred, and what was adjudicated in the suit. It recites that "plaintiff gave chain of title back to the Government," that "defendant interposed the plea of prescription of thirty years," claiming the whole of the property covered by plaintiffs' deed, "but there is not a scintilla of evidence in the record to show the particular spot which Lewis Andrews possessed or the extent of the same." That "the defendant's possession of this

property is without color of title and is unlawful ab initio" and that "she is a mere squatter." On these grounds, and these grounds alone, that one claiming by prescription must identify by pleading and by proof the part he claims, Ellis v. Prevost, 19 La. 256; Turfitt v. Blas Perales (C. C. A.) 63 F. (2d) 659, and cases cited, plaintiffs had judgment in that suit.

The issues presented in this suit of the invalidity of the patent, and of the right of Annie Jason to the land, were not decided. They were not even presented for decision. The master and the District Judge, citing Gould v. Pollard, 129 La. 1, 55 So. 689; Northern Pacific v. McComas, 250 U. S. 387, 39 S. Ct. 546, 63 L. Ed. 1049; Hall & Legan Lbr. Co. v. Jeter, 127 La. 229, 53 So. 533, thought that they could not have been, for that until the right of Annie Jason had been adjudicated by the Land Department, in whom the power of making final decisions in such controversies had been vested by the contract, she had no right or title to assert in the state court, nor would her occupancy of the land avail her under state statutes of prescription, until title had passed from the United States. Evans v. Jackson, 165 La. 737, 116 So. 168.

Conceding that in a petitory action in Louisiana a defendant is bound to plead all the title he then has, under which he claims to be the owner, and that when the defendant stands upon possession, without advancing title in himself, a final judgment rendered in favor of plaintiff may be presented as res judicata against any title which defendant possessed at the time but omitted to plead, Shaffer v. Scuddy, 14 La. Ann. 575; Lindquist v. Maurepas Land & Lumber Co., 112 La. 1031, 36 So. 843; Howcott v. Pettit, 106 La. 530, 31 So. 61; Brigot v. Brigot, 49 La. Ann. 1428, 22 So. 641, they thought that the title now asserted was not, within the qualification of the rule announced in Succession of Whitner, 165 La. 769, 116 So. 180, "a plea or defense which (Annie Jason) might successfully have made in that suit."

Appellant, vigorously countering this conclusion, urges that not the United States, but Annie Jason, is the real party at interest here, and that this suit, "being brought for the benefit of private persons, the Government having no interest in the result, the United States are barred from bringing the suit, if the persons, for whose benefit suit was brought, would be barred." Curtner v. U. S., 149 U. S. 662, 13 S. Ct. 985, 37 L. Ed. 890; U. S. v. New Orleans Pacific, supra.

They argue that if Annie Jason were sole plaintiff in this suit, asserting her rights under the award of the Department, the prior judgment would bar her. They assert that even if she could not have successfully defended the petitory action on the strength of her own inchoate right as actual settler, she could have defeated it on the weakness of plaintiffs' title by showing an outstanding title in the government. They cite as in point Lindquist v. Maurepas Land & Lumber Co., 112 La. 1030, 36 So. 843, 848, a petitory action in which the defendant, plaintiff in a prior petitory action, having obtained a default judgment against Lindquist, defeated the assertion of his alleged pre-emption rights to become the owner of state lands under the laws of Louisiana, with the plea of res judicata. They cite also Lisso v. Devillier, 118 La. 559, 43 So. 163. In that case the defendant in possession defeated the suit by showing that because of actual settlement under the Act of 1887, the patent under which plaintiff claimed was invalid and title was outstanding in the government.

In the first case cited the court held that plaintiff having failed in the first suit to set up his right to acquire the land from the state in whom the title was outstanding, was now barred from doing so, saying: " 'It frequently happens that a defendant in such an action stands upon possession, without advancing title in himself. The judgment in such an action under pleadings of that character would close the door to the subsequent setting up by the defendant of any title which he actually then had.' This language applies not only to a 'closed' or 'absolute' title, but to any inchoate real claims or rights which defendant has in the property which may ripen into a title of ownership under a then outstanding title of a person other than the plaintiff."

We think it perfectly clear that the Master and the District Judge were right in the view they took. The United States was not a party to the petitory suit. It could not have been sued there. Annie Jason did not represent it. She was engaged in pressing an adversary contest in the Department of the Interior to have her right of entry upon the land as public land established and declared. Until that determination came down in her favor, she had neither legal nor equitable title to the land. She had only the opportunity of acquiring title under the public land laws. Nothing in section 2 of the Act of 1887 indicates the purpose to give it the effect of a grant to the occupants. On the contrary, its explicit language makes it clear

that until patent rightfully issued, or right of entry awarded, the lands remained public lands of the United States. U. S. v. New Orleans Pacific Ry. (C. C. A.) 235 F. 833, 837; Oregon & Cal. R. R. v. U. S., 238 U. S. 393, 35 S. Ct. 908, 59 L. Ed. 1360; Lisso v. Devillier, 118 La. 559, 43 So. 163, 164.[3]

The nature of this suit, of the rights asserted in it, and of the position in it of the United States are definitely settled in U. S. v. New Orleans Pacific Ry., 248 U. S. 507, 39 S. Ct. 175, 63 L. Ed. 388. It is there established that by virtue of the statute and the agreement, lands in possession of actual settlers were withdrawn and excepted from the railroad grant and remained subject to entry under the public land laws of the United States; that if they were, notwithstanding this withdrawal, erroneously patented, the patentee and his grantees held them in trust, primarily for the United States, and secondarily for the actual settler, to whom the right of entry should be awarded. That as the patents were issued before, and the suits were brought more than five years after March 2, the prayer that the patents be canceled must be put out of view, and the alternative prayer that the title under the patents be declared to be held in trust for the homestead claimants and the trust enforced, must be regarded as standing alone. That by the Act of 1887 the United States undertook to invest settlers coming within the provisions of the act, with title to the lands in their possession, and also to protect them in that right. That this undertaking charged the United States with the duty and concern, and invested it with the requisite interest, to maintain the suit. To contend that when after the Department of the Interior has determined the right of Annie Jason to have title and possession of the land, the United States brings suit to protect her in that right, it finds itself estopped to do so because of the judgment in a state court in a petitory action adjudicating that the paper title was in the plaintiffs and that the defendant Annie Jason had not made out her claim to prescription, is to misapprehend the nature and effect of the plea of res judicata in Louisiana and elsewhere.

[3] "The statute was a donation of public lands for railroad purposes, and the proviso expressly excepted from the grant all lands occupied by actual settlers, and declared such lands subject to entry. The actual occupancy of such lands excepted them from the operation of the grant, and the rights of the settlers quoad the government did not concern the grantee. We can find nothing in the proviso to warrant the construction that the reservation of public lands was to be determined, not by the earmarks of actual occupation, but by the inchoate rights of the particular settler."

By the Civil Code, art. 2286, it is provided: "The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."

Denying effect to a plea of res judicata, the court, in Schlater v. Le Blanc, 121 La. 919, 46 So. 921, 922, said: "The grounds of action [in the first suit] were different [from those in the second suit]. Those alleged in the present suit never were alleged in the prior suits. The testimony divests particularly the second of these suits of the seriousness that suits should have in order to give rise to the plea of res judicata."

While in Kennon v. Brooks-Scanlon Co., 132 La. 515, 61 So. 555, 557, a case holding that a judgment in a suit to enjoin a breach of contract did not bar a later suit for damages between the same parties for another breach, the court, laying down the strict rule of construction applied in Louisiana to the plea of res judicata, said: "There is no good reason why parties should not be bound by the judgment of a court of justice in a suit in which they appear as parties in interest and upon grounds adjudged by the judgment in the former suit; that is, if the persons, the issues, and the cause are the same. There may be sound reason why it is not res judicata if another res be alleged in another suit and another cause of action. * * * It may be that [the judgment in the former suit would] by inference preclude the possibility of arriving at a different conclusion than that heretofore arrived at, in so far exclusively as relates to nonperformance of terms of a contract. But under the construction of our jurisprudence, which considers that res judicata is subject to strict constructions, we do not find that we can, at this time, maintain res judicata as relates to damages."

▮ Res judicata is a principle of peace. Under its influence an end is put to controversies. Parties and their privies are made to abide definitive and final judgments and litigations are concluded. Under the influence of this demand for finality and peace, it is usually said that judgments settle not only all matters actually litigated in causes, but also all matters which could have been properly litigated in them. Sometimes the principle is broadly laid down that a judgment is not only final as to the matters actually determined, but as to any other matter which the parties might have litigated in the cause, and which they might have had decided. Because, it is a principle of justice and peace, and not a Procrustean formula to be applied with rigidity and rigor, courts and text-writers have often found it necessary to qualify this broad statement.[4]

Bearing out this qualification, it is well settled in jurisdictions preserving by separate administration, the distinction between law and equity, that an adverse decision at law does not settle the equitable rights of the parties. Grand View Building Ass'n v. Northern Assurance Co. of London, 73 Neb. 149, 102 N. W. 246; Id., 203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109. It is in jurisdictions where law and equity are blended to be administered without distinction by the same court, and the general rule is that both legal and equitable rights and defenses which come within the scope of the pleadings, are capable of being urged, and will be barred by the judgment whether pleaded or not; that insistence upon the recognition of the qualification is imperatively required. Under the influence of the qualification it has been held in Texas, a state of fully blended jurisdiction, that one who as plaintiff in a trespass to try title suit had unsuccessfully attacked a judgment as void, was not barred by the judgment in that suit from later, in another suit, asserting that the holder of the judgment held the title in trust for him. Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596.

The most that could be claimed here as to the petitory action is that Annie Jason might have defeated that suit by asserting an outstanding title in the United States because of the invalidity of the patent. She certainly could not, while the matter stood unadjudicated in the Department, have held the de-

[4] In Aurora City v. West, 7 Wall. 82, 102, 19 L. Ed. 42, Mr. Justice Clifford thus states the doctrine: "Where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed in rem judicatam." Says Freeman: "An adjudication is final and conclusive not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to or essentially connected with the subject matter of the litigation, and every matter coming within the legitimate purview of the original action. The general expression often found in the reports, that a judgment is conclusive of every matter which the parties might have litigated in the action is misleading. What is really meant by this expression is that a judgment is conclusive upon the issues tendered by the plaintiff's complaint. It may be that the plaintiff might have united other causes of action with that set out in the complaint or that the defendant might have interposed counterclaims, cross bills and equitable defenses. But as long as these several matters are not tendered as issues in the action, they are not affected by it." Freeman on Judgments, p. 249.

fendants, as owners of the legal title under the patent, to an accountability as her trustees.

We conclude that there is nothing in the petitory judgment obtained by defendants while the application of Andrews for the award of land to him was pending in the Land Office, to bar or affect either the right of the United States to assert the claim for his widow, or for her to assert it for herself. As to the United States, it was neither a party to that action nor in privity with it; while as to Annie Jason, she neither asserted nor could assert there that which she asserts here, not in despite, but in recognition of defendants' legal title and the judgment they got in the petitory suit, that they hold the title in trust for her.

The judgment is affirmed.