McBRIDE, Judge.
On July 15, 1941, Mrs. Marie Bonnecaze (now Castell) obtained a judgment of separation from bed and board from her then husband, Leonce Bonnecaze, Jr., decedent herein, in proceedings No. 238,928 of the Civil District Court for the Parish of Orleans. Subsequently the parties were divorced. At her behest in the separation suit an inventory of the community property was taken on May 1, 1942, and amongst the assets shown thereon appears (quoting from the inventory) the following designation with comments from the notary public:
“STOCKS:
“Best Electric Co., Inc.—
The outstanding stock of this company amounts to 172 shares. Of this amount there is recorded in the name of Leonce Bonnecaze, Jr. 34 shares. However, it has been called to my attention as Notary Public by Mr. David L. Herman, attorney for Mrs. Marie Meral Bonnecaze, by letter addressed to me dated April' 3, 1942, which is here quoted in full:—
“ ‘Mr. Harry Nowalsky, April 3,1942 Canal Bank Building,
New Orleans, Louisiana,
‘“Dear Mr. Nowalsky:—
“ ‘In re: Bonnecaze v. Bonnecaze
“ ‘It is the wish of my client, Mrs. Marie Meral Bonnecaze, that all of the stock in the Best Electric Co., Inc., consisting of 172 shares, be included in your inventory as property belonging to the community existing between her and Mr. Leonce Bonne-caze, Jr., for the reason that each *664 and every share of said stock, no matter in whose name it may be registered, was bought with funds furnished by Leonce Bonnecaze, Jr., and belonging to the said community. Said stock according to the books, being in the following names, and in the following proportions:—
Mr. Leonce Bonnecaze, Jr. - 34 shares
Miss Augusta Bonnecaze -131 shares
Miss Henrietta Hasemann - 7 shares
and should be placed on the inventory at its actual book value, as of the date on which your inventory was made.
“ ‘Yours very truly,
(sgd) David L. Herman
David L. Herman
Attorney for Mrs. Marie
Meral Bonnecaze.’ ”
Then follow further comments by the officiating notary respecting the aforementioned 172 shares of stock, viz.:
“In accordance with this information presented to me I hereby record the entire 172 outstanding shares as belonging to the community existing between the plaintiff and defendant in this proceeding, and having called said matter to the attention of the appraisers in this proceeding, they accordingly appraise same at the sum of 30,000.00. Certain objections to the above inventory were made by Mr. H. L. Hammett, attorney for defendant, Leonce Bonnecaze, Jr., under date of April 18, 1942, and were incorporated in full ’in this inventory, but, upon the verbal request of Mr. H. L. Hammett, I, Notary, have rewritten the last four pages of this inventory so as to eliminate Mr. Hammett’s said objections entirely.”
On May 25, 1942, the husband filed with the court written objections to the inventory as follows:
“The shares registered in the ownership of Miss Augusta Bonnecaze, viz., 131 shares; and Miss Henrietta Hase-mann, viz., 7 shares, in Best Electric Company, Inc., should not be inventoried as belonging to the community.”
Pursuant to judgment dated July 14, 1942, the inventory was approved and homologated by the court, but the judge refused to maintain the wife’s claim that the controverted 138 shares of stock belonged to the community. The judgment of homologation states:
“After due consideration, the Court being of the opinion that the inventory should not be homologated as filed but only insofar as not opposed by the defendant and that the plaintiff herein should be relegated to a direct action as to any property claimed to belong to the community which is in the ownership or possession of third persons, * *
On August 7, 1942, the husband and wife filed a joint petition setting forth that they had entered into- a compromise respecting all claims the one may have against the other and had agreed extrajudicially upon, a partition of the community property in the manner set forth in their petition. They alleged:
“That the plaintiff and defendant, in order to adjust, settle and discharge all rights, claims, demands and causes of action against each other, as well as against third persons, arising out of' said community, said marriage, or any previous acts or transactions between plaintiff and defendant, and both as to the community existing between them, as well as to the separate property or estate of each party hereto, so that the judgment to be rendered on this petition as herein prayed for’, shall constitute a full, complete and final partition of said community, and.a full, complete and final settlement of all claims to separate property, as well as of all claims of every nature and kind whatsoever, now or hereafter existing between said parties or against *665 third persons and arising prior to this date out of said community, said marriage or any previous acts or transactions between plaintiff and defendant, * * * said partition and settlement to be as follows:”
They then informed the court that they had agreed that the wife was to have judgment for $7,750 against the husband payable in cash; that the 34 shares of the capital stock of the Best Electric Company, Inc., standing in the husband’s name should be adjudged to be his sole and separate property free from all claims of the wife; that the other shares of capital stock in the Best Electric Company, Inc., standing in the names of the third persons should be decreed to belong to the parties named in the certificates free and clear of any and all claims of the wife; that the property No. 747-751 South Rampart Street was owned by the Best Electric Company, Inc., and should be relieved and discharged of all claims of the wife. The parties prayed that the court render a judgment commensurate with their wishes as stated in the petition and such a judgment was rendered on August 7, 1942.
The husband died December 19, 1961, and his succession was opened as per the instant mortuary proceedings in which his second wife (Mrs. Iyla Tracy Bonnecaze) was qualified as his testamentary executrix.
During March, 1962, by original and supplemental petitions, the former wife (now Mrs. Castell) filed suit against the succession and decedent’s heirs claiming $100,000. She alleged that the decedent had represented to her that he had no interest in the business known as Best Electric Company, Inc., or in the property 747-51 South Rampart Street, and that acting upon these representations, which were false, she subscribed to the joint petition in the separation proceedings releasing her rights to said property and thus she was misled to believe decedent had no interest therein; that she has now determined that the decedent was guilty of fraud; that he sold the business, Best Electric Company, Inc., “two years ago” for approximately $100,000, of which her share is $50,000; that she has also learned that the immovable property 747-51 South Rampart Street belonged to the decedent and not to Best Electric Company, Inc., but that she never received the value of her share thereof at the time the extrajudicial partition was confected between them. In addition to praying for the monetary judgment, she also prayed that the judgment of partition of August 7, 1942, be annulled, cancelled and set aside.
The testamentary executrix interposed several exceptions to the petition namely, that the claim asserted by Mrs. Castell is res judicata by virtue of the judgment rendered in the separation proceedings on August 7, 1942; that her said claim is res judicata also by virtue of the compromise entered into between herself and decedent; that her claims are prescribed by the prescription of 1, 3, 5 and 10 years; and that the petitions disclose no cause of action.
After a hearing, the trial judge maintained the exception of res judicata and dismissed the action, and Mrs. Castell has appealed from the judgment.
Her claim to one-half the value of the real estate 747-51 South Rampart Street may be disposed of summarily because that property stood in the name of Best Electric Company, Inc., and whatever its value was at the time of the partition between the parties, such was reflected in the appraisement of the capital stock of the corporation in whose name it stood when the appraisement of the stock was made. But be that as it may, the heretofore mentioned joint petition setting forth the compromise specifically mentioned that said real estate was to be “relieved” of any and all claims of the wife.
The exception of res judicata was correctly maintained. As appears above, the parties, from the very inception of the separation proceedings, were disputing the ownership of the 138 shares of Best Electric Company, Inc., the wife contending that *666 said shares belonged to her then husband, while, on the other hand, he claimed that such shares did not belong to him, but, on the contrary, were owned by the two third parties in whose names the certificates were issued. The entire 172 shares of stock were listed on the inventory as belonging to the husband, and the notary public set forth the contention of the wife that the stock was the husband’s. Also as pointed out the husband appeared in court and objected to the inventory on the ground that 7 shares of the stock were owned by Henrietta Hase-mann and that Augusta Bonnecaze owned 131 shares. The inventory, reflecting what the wife was contending, prompted the wife to bring a rule against the husband to show cause why the inventory should not be homologated as written. As has been said, upon trial of this rule, at which both the husband and wife were represented by counsel, a judgment of homologation was rendered and the court resolved the dispute regarding the ownership of the stock, as follows:
“After due consideration, the. Court being of the opinion that the inventory should not be homologated as filed but only insofar as not opposed by the defendant and that the plaintiff herein should be relegated to a direct action as to any property claimed to belong to the community which is in the ownership or possession of third persons, * *.”
The record before us effectively negates the wife’s pretensions that fraud and misrepresentation were practiced upon her.
The judgment of homologation was rendered some twenty years ago, and the wife so far as is shown never appealed therefrom, nor did she bring any direct action or actions against the third parties.
The demand for the value of the corporate stock presently asserted by the former wife and the claim made by her in the separation suit some twenty years ago that she was entitled to one-half the stock are identical; the demand is founded on the same cause of action and is made between the same parties, their representatives or privies. LSA-C.C. art. 2286.
LSA-C.C. art. 3556(31) provides as follows:
“Thing Adjudged. — Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.”
In Norah v. Crawford, 218 La. 433, 49 So.2d 751, this quotation appears:
“Matters once determined by a court of competent jurisdiction, if the judgment has become final, can never again-be called into question by the parties, or their privies, * *
The United States Circuit Court of Appeals, Fifth Circuit, in Opelousas-St. Landry Securities Co., Inc. v. United States, 5 Cir., 66 F.2d 41, certiorari denied 290 U.S. 648, 54 S.Ct. 120, 78 L.Ed. 589, in a case emanating from Louisiana, said:
“Res judicata is a principle of peace. Under its influence an end is put to controversies. Parties and their privies are made to abide definitive and final judgments and litigations are concluded. >¡< >f
The same may be said of the compromise-as set out in the joint petition filed August 7, 1942. The parties therein agreed that all claims by the one against the other were discharged, and particularly they agreed' that the disputed 138 shares of the capital' stock of Best Electric Company, Inc., belonged to the parties named in the certificates free and clear of any and all claims of the community or the wife. They also-stipulated that the property 747-51 South Rampart Street is owned by the Best Electric Company, Inc.
LSA-C.C. art. 3071 provides:
“A transaction or compromise is an-agreement between two or more per- *667 «ons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of .them prefers to the hope of gaining, balanced by the danger of losing.”
According to LSA-C.C. art. 3078 transactions have, between the interested parties, a force equal to the authority of things adjudged.
For these reasons, the judgment appealed from is affirmed.
Affirmed.