(67 South. 540)

No. 20317.

MEUNIER v. THIBODAUX.

(Feb. 8, 1915.)

*(Syllabus by the Court.)*

DIVORCE ⊜27—SEPARATION FROM BED AND BOARD—RIGHT OF ACTION—PETITION.

Where the allegations of a petition in a suit for separation from bed and board are such as, taking them to be true and assuming that they can be sustained by proof, to indicate that the plaintiff would find living with defendant insupportable by reason of defendant's conduct, there should be a trial on the merits, and a judgment sustaining an exception of no cause of action will be reversed.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 62–83; Dec. Dig. ⊜27.]

Appeal from Twenty-Seventh Judicial District Court, Parish of St. James; Charles T. Wortham, Judge.

Action by Mrs. Clara May Madeline Meunier, wife, against Henry Joseph Thibodaux, husband. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Guion, Lambremont & Hebert, of Lutcher, for appellant. Pugh & Himel, of St. James, and John L. Peytavin, of New Orleans, for appellee.

MONROE, C. J. Plaintiff prosecutes this appeal from a judgment sustaining an exception of no cause of action. She alleges, among other things, that she brought a similar suit in 1912, and that it was disposed of by an opinion and decree, from which she makes the following excerpt, to wit:

"Man is prone to err. The defendant has seriously erred. The evidence shows, however, that he is not without real affection for his children and for his wife. He has frequently visited and been kind to his children, after the mother carried them from his home. Nor does the court believe that the plaintiff is wanting in the feelings which become a wife and mother. Forbearance and forgiveness, within certain limits, are the duties which the law and society impose on both husband and wife. In refusing this separation, the court hopes that the wife will speedily return to her husband; that her husband will receive her kindly and tenderly, cease harsh language towards her and bestow on her the gentleness which the weaker sex requires; that the wife will minister to her husband's infirmity; and that both will be happy as their sons and daughters grow up around them. The charge of public defamation is not established, and it is not insisted that it is. The court will make the decree one of nonsuit, so as not to preclude the plaintiff from making use of the same facts in a future suit, should the husband be guilty of abuses or cruel treatment in the future, so as to render their living together insupportable."

And, it is alleged, there was judgment of nonsuit.

The petition contains other allegations, setting out, in great detail, the charges of harshness, abuse, defamation, and cruelty of various kinds, extending over a period of about five years, up to July, 1912, when petitioner instituted her first suit. It is further alleged that, after the rendition of the judgment in that suit, plaintiff came to New Orleans, with her six children, and lived with her mother; that defendant came there to see the children, and, shortly afterwards, made overtures, through plaintiff's brother, for a reconciliation, that plaintiff then met him, at her brother's house, and that he admitted that he had been altogether at fault, implored her forgiveness, and assured her that she should have no cause to complain, in the future, if she would consent to the reestablishment of their relations; that she told him that she could never live with or near his sisters, who had grossly defamed her, and he agreed that her position was correct, and that he would not ask her to return to St. James, but would himself come to New Orleans to live and engage in business, and that thereupon they were reconciled, and he remained in New Orleans with her and the children for about a week, when she accompanied him to St. James, where they packed their household effects and shipped them to New Orleans, and she returned to that city; that defendant remained in St. James, but visited his family three times within six weeks, but that he failed to go

into business, as he had said that he would, and within a few months announced that he had changed his mind and engaged in business in St. James; that he took three of the children to St. James, and, as petitioner heard nothing from them and became uneasy, she went to St. James, and sent word to defendant from a boarding house, requesting him to send the children to see her, to which he replied that she could not see them, save at the home of his sisters, where they were staying; that she then asked that she be permitted to see them at the former matrimonial domicile, to which defendant consented, but refused to let her see them alone, or take them back to New Orleans, and was harsh and rough to them and to her, telling them that they might cry their eyes out but would never return to their mother, and abusing and slandering her in their presence; that upon leaving she exacted a promise that the children should be permitted to write to her, but that, during the following week, she heard nothing from them, and again returned to St. James, and sent word to her husband that she wished to see them, to which he replied, as before, that she could see them only at his sisters'; that she went to the gate of the sisters' residence and called him thereto, and he spoke roughly to her, did not even shake hands, and refused to allow the children, who were locked up in the house, to come out and see her; and that she came away without seeing them. She further alleges that, since the reconciliation, defendant has, by fraud and deceit, taken possession of three of the children, but otherwise has abandoned his family and the matrimonial domicile and has made no provision for their maintenance.

There are still other allegations, from which it appears that defendant's disposition and conduct towards plaintiff are about as before the reconciliation, and are aggravated by the fact that he has repudiated the agreement upon the basis of which the reconciliation was effected. The judge a quo was of opinion that, upon the face of the papers, it was the duty of the plaintiff to return to St. James and live with her husband, and that she need not live with his sisters; but we gather from the petition that the matrimonial domicile has been abandoned, and that, even if it were open, the attitude of the defendant towards plaintiff is such as would render their living together insupportable. This, of course, taking the allegations of the petition to be true and assuming that plaintiff will be able to sustain them by proof.

It is therefore ordered that the judgment appealed from be set aside, the exception of no cause of action overruled, and the case remanded, to be proceeded with according to law; defendant to pay the costs of the appeal.