(81 South. 400)

No. 21874.

MILLET v. MILLET.

(March 31, 1919.)

*(Syllabus by Editorial Staff.)*

1. DIVORCE ⟢27(6)—SEPARATION FROM BED AND BOARD—CRUELTY.

A wife who tried to rescue her son from her husband, who was choking and striking him, and who was thrown by husband against a wall, dislocating her shoulder, and was confined to a bed for several days, during which husband did not come to see her and showed no disposition to repent of such wrongs, was entitled to a separation from bed and board on ground of cruel treatment.

2. DIVORCE ⟢49(1)—SEPARATION FROM BED AND BOARD—CRUEL TREATMENT—CONDONATION.

Where a wife suffered cruel treatment from her husband and was compelled to stay in bed in the common house without cohabitation, for several days until she was able to leave, and then left, and never returned, and at once instituted suit for separation from bed and board, there was no condonation.

Appeal from Twenty-Seventh Judicial District Court, Parish of St. James; Charles T. Wortham, Judge.

Suit by Mrs. Laura Robert Millet against Olide Millet. From a judgment for plaintiff granting a separation from bed and board and giving her the custody of minor children, defendant appeals. Affirmed.

Charles Louque, of New Orleans, for appellee.

DAWKINS, J. This is an appeal by the defendant husband from a judgment in favor of the plaintiff wife granting her a separation from bed and board and giving her the custody of their two minor children.

The petition alleges that defendant had been guilty of cruel and outrageous treatment toward plaintiff, which rendered their longer living together insupportable.

The answer denies the allegations of the petition, but avers that, if the acts therein charged by plaintiff were committed, the same were subsequently condoned by plaintiff's living with defendant as husband and wife for more than two weeks.

Opinion.

The record shows that plaintiff and defendant were married in October, 1896, and of this union two children, a boy and a girl, were born, who, at the date of the separation, were aged 12 and 15 years, respectively.

[1] Early one evening in July, 1914, at their home in Gramercy, La., the defendant came into the house and ordered his minor son to get his (the son's) hat and go with his father. The boy demurred and began to cry, whereupon the father seized him and commenced choking and striking the boy with his hands. Immediately the mother and little daughter went to the child's rescue, the daughter pummeling her father in the stomach and side, and the mother catching hold of her son in an effort to get him away from his father. Thereupon defendant commanded the little girl to stand aside, and, grabbing his wife by the arm and shoulder, shoved her against the wall or door with such force that her shoulder was dislocated. He then made the boy put on his hat and accompany him to a place where some one was conducting a night school of stenography. About an hour afterwards the son returned, but just what time defendant came home that night is not shown by the evidence. While the trouble was in progress, or shortly thereafter, some of the neighbors were attracted by the screams of the mother and children, and started into the home, but were ordered back by the defendant. After defendant and his son left, plaintiff continued to complain of her shoulder and arm for some time, and finally got up and started into the house. On reaching the door between the bedroom and kitchen she fainted, and the little girl, who was the only one left with her began to

scream for help. Eventually some of the neighbors came in and helped to put her to bed. Calls were promptly put in for a doctor, but none could respond until early the next morning, when a Dr. Jones came and replaced plaintiff's shoulder joint by putting his foot with the shoe off in the armpit and pulling on the arm until it was restored. Plaintiff was in bed several days, during which time the defendant occupied another room, with the door between locked, taking his meals at a restaurant, and never once going in to see his wife, or attempting to minister to her needs. In the meantime the little daughter did the cooking for her mother, brother, and self, as well as the other household duties.

[2] The facts above recited constituted cruel treatment in the extreme, and the record discloses that defendant showed no disposition whatever to repent of these wrongs toward his wife. As soon as she was able to travel, she came to the city of New Orleans to visit some of her relatives, has never returned, and promptly instituted this suit for separation from bed and board. The evidence does not disclose any condonation on her part, but rather shows that she was compelled to remain in the common home until she was able to leave. There was no cohabiting during this time.

According to the testimony of the children, which, of course, must be taken with care, there had been previous differences between the parties, but not anything like as violent as on the occasion above referred to.

While, under ordinary circumstances, we would not be inclined to grant a separation based upon one act alone where there was a possibility of reconciliation between the parties, for all are human and liable to err, but the conduct of the defendant in this instance was such as to render it highly improbable that the parties will ever become reconciled toward each other. In any event, the law has wisely provided a period of one year, in which an opportunity for such is given, before the final decree may be entered.

We think the circumstances were such as to entitle the plaintiff to a separation from bed and board. Schlater v. Le Blanc, 121 La. 921, 46 South. 921; Mewnier v. Thibodauz, 136 La. 655, 67 South. 540.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.